SOUTH BOSTON SAVINGS BANK *vs.* COMMISSIONER
OF REVENUE.

Suffolk. March 7, 1994. - October 5, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Taxation*, Bank excise tax, Exemption. *Statute*, Construction.

The Appellate Tax Board correctly concluded that a savings bank's invest-
ments in mortgage-backed "pass-through" or "participation" certifi-
cates qualified as "loans secured by the mortgage of real estate" within
the meaning of G. L. c. 63, § 11, so as to be deductible in calculating
the amount of excise tax owed by the bank in certain tax years. [698-
703]

APPEAL from a decision of the Appellate Tax Board.
The Supreme Judicial Court granted a request for direct
appellate review.

*Robert J. Munnelly, Jr.*, Assistant Attorney General, for
the Commissioner of Revenue.

*Kenneth A. Cohen* (*William R. Moore* with him) for the
taxpayer.

O'CONNOR, J. General Laws c. 63, § 11, as in effect for
the tax years ending October 31, 1983, and October 31, 1984
(see 1984 ed.), imposed on every savings bank an excise
based in part on "the average amount of [the savings bank's]
deposits or of its savings accounts and share capital . . .
after deducting from such average amounts . . . the unpaid
balances on its loans secured by the mortgage of real estate."
The question presented in this appeal, brought by the Com-
missioner of Revenue (Commissioner), is whether the statu-
tory language permitting a savings bank to deduct the
amounts of "unpaid balances on its loans secured by the
mortgage of real estate" from "the average amount of its de-
posits or of its savings accounts and share capital" in calcu-

lating its excise authorized South Boston Savings Bank (taxpayer) to deduct the amounts it had invested in certain "pass-through" and "participation" certificates in computing its tax. We conclude, as did the Appellate Tax Board (the Board), that the taxpayer's investments in these pass-through and participation certificates qualified under the statute as "unpaid balance on its loans secured by the mortgage of real estate," and that the taxpayer was therefore entitled to the statutory deduction. Accordingly, we affirm the Board's decision granting the taxpayer an abatement.

This matter came before the Board on the taxpayer's appeal from a decision of the Commissioner denying the taxpayer's request for an abatement for the excise it paid on the portion of deposits it had invested in pass-through and participation certificates. The taxpayer had deducted amounts representing these investments on its 1983 and 1984 returns. The Commissioner assessed additional excises for both years following a hearing by the Commissioner's appeal and review bureau, and the taxpayer, after paying the additional assessment, applied to the Commissioner for abatement and then filed an appeal from the Commissioner's denial with the Board.

The evidence presented to the Board consisted of stipulated facts, documentary exhibits and hearing testimony. Neither party objects on appeal here to any factual finding of the Board; rather, the Commissioner argues legal error in the Board's construction of G. L. c. 63, § 11. We begin our review of the Board's decision by summarizing the facts found by the Board from the extensive uncontested evidence before it.

The Board found that the taxpayer, in calculating its excise for the 1983 and 1984 tax years, "deducted from its total deposits amounts representing its investments in Government National Mortgage Association pass-through certificates (GNMAs), Federal Home Loan Mortgage Corporation participation certificates (FHLMCs), Federal National Mortgage Association pass-through certificates (FNMAs), and other mortgage-backed pass-through or par-

ticipation certificates." The Board described the nature of these investments, to which it referred collectively as "pass-through certificates," as follows.

> "Pass-through certificates or mortgage-backed securities represent undivided interests in an underlying pool of mortgages created out of mortgages originated or acquired by a bank or trustee. The mortgage holder — whether the mortgage lender or a private or governmental entity that acquires them — then issues certificates which represent individual undivided interests in the pool and are sold to investors, such as the [Bank]. The documents for the underlying mortgages are transferred to a trustee or custodian and held for the benefit of the certificate holders pursuant to a trust agreement. The mortgages may be serviced by the original mortgage lender or by another institution under contract with the issuer of the certificates. The servicing entity collects the monthly payments of principal, interest, and prepayments of principal from the individual mortgagors and passes them through to the certificate holders."

Further describing the nature of the investments, to which we also shall refer collectively as "pass-through certificates," the Board found that (1) "the loan terms are not discussed between the certificate holder and the issuer of the mortgage"; (2) that "the terms between the issuer and the mortgagor remain in effect between the mortgagor and the servicing entity which holds the mortgages for the benefit of the pool participants"; and (3) that a pool participant "receives payments of principal and interest as if it had made the loans directly."

Finally, the Board incorporated by reference documents detailing the terms, procedures, conditions and requirements governing each of the relevant pass-through programs, as well as models of the typical certificates held by the taxpayer in 1983 and 1984. These documents and model certificates indicate, as the taxpayer observes in its brief, that certificate

holders own an undivided beneficial interest in an underlying pool of loans secured by mortgages, they receive interest and repayment of principal on the mortgage loans on a periodic basis, they receive any prepayment of principal, and they receive proceeds of any foreclosure. The documents also indicate, as the taxpayer observes, that a trustee or custodian holds all of the right, title and interest in the pool of mortgage loans for the benefit of the certificate holders, that the trustee or custodian is obligated to foreclose upon default of a mortgagor, and that the certificate holders have the power to remove and replace the trustee or custodian for failing to fulfil its various obligations. The Commissioner makes clear in his reply brief that he does not dispute the factual elements of pass-through certificates.

As stated above, the Commissioner argues legal error. Specifically, the Commissioner contends that the Board has erroneously interpreted G. L. c. 63, § 11, by (1) determining that pass-through certificates are "loans secured by the mortgage of real estate," rather than a different form of investment; and by (2) either not considering whether, or mistakenly concluding that, these investments, if they were "loans secured by the mortgage of real estate," were "*its*" (the taxpayer's) loans. There was no error in the Board's interpretation of the statute.

We have frequently recognized that an exemption from taxation "is a matter of special favor or grace," and that statutes granting exemptions from taxation are therefore to be strictly construed. See, e.g., *State Tax Commission* v. *Blinder*, 336 Mass. 698, 703 (1958) ("an exemption [is] . . . to be recognized only where the property falls clearly and unmistakably within the express words of a legislative command"); *Animal Rescue League of Boston* v. *Assessors of Bourne*, 310 Mass. 330, 332 (1941) ("[a] taxpayer is not entitled to an exemption unless he shows that he comes within either the express words or the necessary implication of some statute conferring this privilege upon him"). The burden is on the taxpayer to demonstrate entitlement to an exemption claimed. *State Tax Commission* v. *Blinder, supra*

at 703. The taxpayer has met its burden in this case by demonstrating through substantial and uncontested evidence concerning the nature of the pass-through certificates that the taxpayer's investments in these pass-through certificates fall within the plain and ordinary meaning of the express words of c. 63, § 11. See *Johnson's Case*, 318 Mass. 741, 747 (1945) (even where a statute is to be construed broadly, rather than narrowly, it is settled that the statute's "words must be given their plain and ordinary meaning according to the approved usage of language").

We agree with the Board that the pass-through certificates were, under the plain and ordinary meaning of the statute, "loans secured by the mortgage of real estate." The funds expended by the taxpayer in acquiring pass-through certificates replaced the funds of an original mortgage lender. The pass-through certificates received by the taxpayer in exchange evidenced the taxpayer's possession of an undivided beneficial interest in a pool of loans secured by mortgages. As a certificate holder, the taxpayer was entitled to receive payments of principal and interest collected by a servicing entity from the individual mortgagors and was entitled to receive the benefit of any prepayments of principal. In essence, then, by purchasing pass-through certificates, the taxpayer substituted its funds for that of original mortgage lenders and engaged trustees to manage the pro rata portion of the pool of loans it acquired in exchange. The instruments held by the taxpayer as a result of its investment of funds therefore functioned like conventional mortgage loans, except that, as the Board observed, "instead of the mortgages themselves, the [taxpayer] held equitable interests, represented by certificates issued by the bank itself, other banks, or government agencies, in pools of loans secured by mortgages on the underlying real estate." Thus, by investing funds in pass-through certificates, the taxpayer acquired a pro rata share of various "loans secured by the mortgage of real estate."

Contrary to the Commissioner's suggestion, the provisions of the savings bank statute governing permissible uses of a bank's funds — c. 167E titled "Mortgages and Loans" and

c. 167F titled "Investments and Other Powers," as appearing in St. 1982, c. 155, § 9 — do not require a different construction of this portion of the excise statute.[1] The exemption provision in G. L. c. 63, § 11, refers to a bank's mortgage loans generally. Even if we were to accept the Commissioner's argument that the scope of the phrase "loans secured by the mortgage of real estate" within the excise statute is necessarily limited by the terms, or by the organization, of provisions in the savings bank statute (an argument which is tenuous at best since the purposes of the two statutes are not identical and since they have never been explicitly connected by the Legislature despite numerous amendments), we would agree with the taxpayer that there is authority in c. 167E as well as in c. 167F for banks to invest funds in pass-through type arrangements. See G. L. c. 167E, § 1A(1), as appearing in St. 1982, c. 155, § 9 (giving banks the power to "buy, invest in [and] hold . . . bonds or notes secured by mortgages"); G. L. c. 167E, § 2(B)(12), as appearing in St. 1982, c. 155, § 9 (authorizing banks to participate in mortgage lending with other qualified entities and to enter into agreements providing "for the custody of the note and mortgage in the commonwealth and for the servicing and foreclosure thereof"); G. L. c. 167E, § 6(14), as appearing in St. 1982, c. 155, § 9 (authorizing banks to purchase stock of the Federal National Mortgage Association). We concluded in *United States Trust Co.* v. *Commonwealth*, 245 Mass. 75 (1923), that direct and collateral mortgages were both loans "secured by the mortgage of real estate" within the meaning of the statutory predecessor to G. L. c. 63, § 11, although they were considered under the savings bank statute then in effect to be two different types of loans. In so concluding, we observed that "[t]he failure to make any distinction between [direct and collateral mortgages] in the taxation section, while discriminating

---

[1]Our review of the record indicates that, contrary to the taxpayer's contention, the Commissioner's argument concerning the relevance of the savings bank laws was raised before the Board and is properly before us on appeal.

clearly between them in the investment section, as to savings deposits, tends to show that they are to be grouped in the taxation section and that there they both stand on the same footing." *United States Trust Co., supra* at 79-80. The same principle applies here: the failure to distinguish in the taxation statute among types of a bank's loans secured by mortgages of real estate, while distinctions are made in the savings bank statute, tends to show that direct and acquired mortgage loans, as well as legally and equitably held mortgage loans, qualify for exemption under the excise statute. Thus, we do not think an examination of the savings bank statute requires a conclusion that pass-through certificates are not "loans secured by the mortgage of real estate."

Under the statutory requirements for exemption, it is not enough that the taxpayer's investments were "loans secured by the mortgage of real estate." The investments must also have been *its* — that is, the taxpayer's — loans. The Commissioner apparently would have us construe the term "its" as requiring direct legal ownership, but we think the plain and ordinary meaning of the term "its" does not support such an interpretation. A bank may come into possession of a mortgage loan either by directly issuing a loan secured by the mortgage of real estate or by acquiring a loan previously issued by another lender. See, e.g., G. L. c. 167E, § 2(A), as appearing in St. 1982, c. 155, § 9 (a bank "may make, acquire by purchase, participate in or service first mortgage real estate loans of [certain] classes"). Similarly, a bank's ownership of a mortgage loan may be legal or equitable. See, e.g., G. L. c. 167E, § 2(B)(12), as appearing in St. 1982, c. 155, § 9 (authorizing participation loans in which the participating entities enter into a written agreement including "provisions for the custody of the note and mortgage in the commonwealth and for the servicing and foreclosure thereof"). The term "its" certainly connotes ownership, but does not itself provide a basis for distinguishing between direct and indirect or between legal and equitable ownership.

The Commissioner expressly conceded in a closing argument to the Board that a loan secured by the mortgage of

real estate sold directly from Bank A to Bank B would be deductible to Bank B.[2] As we see no significant difference in substance from the Bank's point of view, aside from the level of risk involved and the burden of loan management respon- sibilities, among a mortgage loan issued directly by the tax- payer, a mortgage loan acquired in its entirety directly from another mortgage lender, and an undivided beneficial interest in a pool of mortgage loans acquired by the taxpayer, we agree with the Board that the taxpayer's investments in pass- through certificates were *its* loans secured by the mortgage of real estate. If, as the Commissioner suggests, the addition of the word "its" to the statute suggests a legislative intent to require ownership and control as a qualification for exemp- tion, we think that legislative intent was satisfied by a trust arrangement under which the taxpayer, as a participating eq- uitable owner of the mortgage loan, was able to exert control over the loans through a trustee.

Based on a plain and ordinary reading of the exemption provision contained in G. L. c. 63, § 11, we conclude that the taxpayer was entitled to deduct the amounts it had in- vested in pass-through certificates from "the average amount of its deposits or of its savings accounts and share capital" in computing its excise tax for 1983 and 1984. Accordingly, we

---

[2]The transcript of the Commissioner's closing argument to the Board reads, in part, as follows:

"The bank argues that pass-through certificates are merely a re- placement for an actual mortgage loan. The hypothetical that they give you is that Bank A has loans, decides to issue certificates. Bank B buys the certificates. We don't have any problem with the deduc- tion in that case. We wouldn't have any problem with it if Bank A decided to sell loans to Bank B directly. There is clearly still a loan and the deduction should be allowed."

To the extent the Commissioner intends in his reply brief to suggest that the term "its" restricts the application of the exemption to mortgage loans issued in the first instance by the bank claiming a deduction, the Commis- sioner's reply brief is inconsistent with the argument made to the Board.

affirm the decision of the Board granting the taxpayer a corresponding abatement.

*So ordered.*