AA Transportation Company, Inc. *vs.* Commissioner of Revenue.

Suffolk. March 4, 2009. - June 12, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Taxation,* Sales tax: exemption; Abatement. *Bus. Department of Telecommunications and Energy. Administrative Law,* Agency's interpretation of statute. *Statute,* Construction.

The Appellate Tax Board reasonably determined that a transportation company could not rely on a certificate of public convenience and necessity issued pursuant to G. L. c. 159A, § 7, to obtain a sales tax abatement under G. L. c. 64H, § 6 (*aa*), for buses purchased before the certificate was issued. [118-122]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William E. Halmkin (Richard L. Jones* with him) for the taxpayer.

*Jennifer Grace Miller,* Assistant Attorney General, for Commissioner of Revenue.

COWIN, J. In this case we are asked to determine whether a transportation company may rely on a certificate of public convenience and necessity issued pursuant to G. L. c. 159A, § 7, to obtain a tax abatement under G. L. c. 64H, § 6 (*aa*), for buses purchased before the certificate was issued. The latter statute provides that possession of a certificate of public convenience and necessity is a prerequisite for eligibility for a tax exemption thereunder. Since the taxpayer here did not possess such a certificate at the time the buses were purchased, we affirm the Appellate Tax Board's (board's) decision that the transportation company was not entitled to a tax abatement for the three years (1999-2001) before its certificate was issued.

*Background.* Common carriers in Massachusetts offering

transportation services by motor vehicle, except where the carrier is under the jurisdiction of a transit authority,[1] are regulated and supervised by the Department of Telecommunications and Energy (DTE).[2] See G. L. c. 159, § 12; G. L. c. 159A, §§ 1, 3, 10, 11, 11A; G. L. c. 161B, § 6 (*i*). The DTE licenses bus transportation as either fixed route service open to the public under G. L. c. 159A, § 7, or "charter," "school," and "special" services under G. L. c. 159A, § 11A.

Fixed route services are those in which a vehicle available to the public travels along a specific route and makes stops to receive and discharge passengers at predetermined locations. See G. L. c. 159A, § 1. In order to operate a fixed route service, a carrier must obtain a separate license from all the cities or towns in which the route is located, in accordance with the provisions of G. L. c. 159A, § 1, and a certificate of public convenience and necessity from the DTE pursuant to G. L. c. 159A, § 7. This certificate "specif[ies] the route or routes over which the motor vehicles to be used thereunder may operate, and may prescribe the period during which the rights granted therein . . . may be exercised." *Id.*

Services licensed under G. L. c. 159A, § 11A, in contrast, are intended to serve specific groups of individuals. All carriers providing these services, even those with a § 7 certificate, must obtain a separate license from the DTE. "Charter services" are those in which a particular group of people has exclusive use of the entire vehicle for one trip and the vehicle may take any route to its destination. See G. L. c. 159A, § 11A. "Special services" are defined, in pertinent part, as "transportation by motor vehicle over a route other than one certified to the [carrier] under [G. L. c. 159A, § 7], for any special purpose, event or

[1]The Department of Telecommunications and Energy (DTE), see note 2, *infra*, retains jurisdiction and control of carriers under the jurisdiction of a transit authority in matters of the "safety of equipment and operations." G. L. c. 161B, § 6 (*i*).

[2]When the plaintiff corporation was incorporated in 1996, the DTE was named the Department of Public Utilities; the name was changed by statute in 1997. See St. 1997, c. 164, § 186. In 2007, the DTE was reorganized by statute into two separate agencies, the Department of Telecommunications and Cable and the Department of Public Utilities (DPU); among other services, the DPU now regulates common carriers. See St. 2007, c. 19, § 21. At all times relevant to this appeal, the agency was known as the DTE.

occasion or series of events or occasions, or under contract to a business establishment or for the transportation of employees to a place of employment, of a number of passengers to whom the carrier itself . . . has sold or intends to sell tickets for transportation service." G. L. c. 159A, § 11A.

Pursuant to G. L. c. 64H, § 6 (*aa*), if a carrier holds a certificate under G. L. c. 159A, § 7, it may be exempt from sales tax for the purchase or maintenance of its buses. An exemption from taxation may be granted for:

> "Sales of new and used motor buses used to provide scheduled, intracity local service (as defined by the [DTE]), and repair or replacement parts therefor, and materials and tools used in and for the maintenance and repair thereof to, and for the use of common carriers of passengers by motor vehicle for hire, which hold at least one certificate, issued by the [DTE] pursuant to the provisions of [G. L. c. 159A, § 7]. Upon receipt of appropriate evidence of the possession of such a certificate, the [Commissioner of Revenue (commissioner)] shall prepare and issue to any such duly certificated common carrier a statement that it is entitled to the exemption granted by this paragraph."[3]

*Facts and procedural history.* The facts are taken from the findings of the board, supplemented by evidence in the record; the essential facts are not disputed.[4] The plaintiff, AA Transportation Company, Inc. (AA Transportation), is a Massachusetts corporation engaged in providing transportation services within Massachusetts. When it was incorporated in 1996, AA Transportation acquired a § 11A license from another bus company; the transferred license permitted AA Transportation to operate charter and special services within a limited geographic area in central Massachusetts. In March, 2002, DTE approved AA Transportation's request for an unlimited charter certificate to operate charter services throughout Massachusetts.

---

[3]Department of Revenue regulations at times refer to the "statement" of tax exemption as a "certificate." See 830 Code Mass. Regs. § 64H.25.1(7)(j) (1993) (to establish exemption, taxpayer "must hold" a "Certificate of Exemption form [Department of Revenue Form MVU-20]").

[4]The parties submitted to the board a statement of agreed facts and stipulated documents. The board also heard testimony from a number of witnesses.

From 1996 until 2002, AA Transportation was engaged in providing charter services for schools and private companies. During the period at issue, tax years 1999, 2000, and 2001, AA Transportation operated a charter bus service for United Parcel Service (UPS) along the same route and with the same stops as the Worcester Regional Transit Authority's (WRTA's) bus route "5E." While this service was intended to transport UPS workers from Worcester to their jobs at UPS's facility in Shrewsbury at times when the WRTA buses did not operate or extra capacity was needed, members of the public also boarded the UPS-chartered buses for a fee of one dollar per ride. To support its operations, AA Transportation purchased a number of buses in each of the 1999, 2000, and 2001 tax years; it paid a total of $140,512 in sales tax for these purchases.

In January, 2002, before it had filed either its application for a § 7 certificate or its application for a statement of tax exemption, AA Transportation applied to the Department of Revenue (department) for a sales tax abatement of $168,812 for buses and parts purchased in 1999, 2000, and 2001.[5] See G. L. c. 64H, § 6 (*aa*). In June, 2002, AA Transportation applied to the DTE for a certificate of public convenience and necessity to operate fixed bus routes. See G. L. c. 159A, § 7. On August 2, 2002, while AA Transportation's application for the § 7 certificate was pending, the department issued AA Transportation a "certificate for sales and use tax exemption" under G. L. c. 64H, § 6 (*aa*). On August 22, 2002, the DTE issued AA Transportation a § 7 certificate to operate fixed bus routes in Maynard and Acton. When the commissioner subsequently notified AA Transportation of his intention to deny its abatement request, AA Transportation requested a hearing. See G. L. c. 62C, § 37. Following this hearing, the commissioner denied the abatement request and AA Transportation appealed to the board. The board held an evidentiary hearing and issued a decision upholding denial of the abatement application. A department employee testified at the hearing that the sales tax exemption certificate was issued in error in reliance on AA Transportation's erroneous statement in its

---

[5]Prior to the hearing before the board, AA Transportation withdrew its application for abatement of the tax on the bus parts and maintained only its request for abatement of $140,512 in tax on the buses.

application that it already had a § 7 certificate. AA Transportation appealed the board's decision to the Appeals Court. We transferred the case from the Appeals Court on our own initiative.

*Discussion.* The board concluded that, in order to be eligible for an exemption under G. L. c. 64H, § 6 (*aa*), a taxpayer must possess a § 7 certificate at the time of purchase. In this regard, the board characterized possession of a § 7 certificate at the time of purchase as "an explicit and unambiguous requirement of the exemption." The board determined that AA Transportation was not entitled to an abatement of sales tax because AA Transportation did not hold a § 7 certificate when it purchased the buses at issue. Since AA Transportation did not in fact obtain a § 7 certificate until August, 2002, it was not eligible for an abatement for buses it purchased from 1999 through 2001.

AA Transportation argues that the board misconstrued G. L. c. 64H, § 6 (*aa*), and erroneously "imputed" a requirement, not present in the statute, that a taxpayer must have a § 7 certificate before making a purchase in order for that purchase to be exempt from the sales tax. AA Transportation asserts that its purchases of buses during the period at issue were exempt from sales tax pursuant to G. L. c. 64H, § 6 (*aa*), because it obtained a § 7 certificate before the expiration of the statutory period within which a taxpayer may apply for an abatement of sales tax, G. L. c. 62C, § 37, and that a § 7 certificate need not have issued prior to purchase of the buses or even prior to the filing of the abatement application. In support of this proposition, AA Transportation points to what it claims is the statute's ambiguity, and contends that the ambiguity must be construed in favor of the taxpayer. It argues in addition that the board erred in determining that AA Transportation was not eligible for a certificate of tax exemption under G. L. c. 64H, § 6 (*aa*), because it did not operate a "scheduled, intracity local" bus service.

We accord the board's decision great deference and will not disturb its decision "if [it] is based on both substantial evidence and a correct application of the law." *Boston Professional Hockey Ass'n* v. *Commissioner of Revenue*, 443 Mass. 276, 285 (2005). Notwithstanding this deference, a question of statutory interpretation "is a question of law for us to resolve." *Bell Atl.*

*Mobile of Mass. Corp., Ltd.* v. *Commissioner of Revenue*, 451 Mass. 280, 283 (2008). However, because the board is an agency charged with administering the tax law and has "expertise in tax matters," *RHI Holdings, Inc.* v. *Commissioner of Revenue*, 51 Mass. App. Ct. 681, 685 (2001), we give weight to its interpretation of tax statutes, *Bell Atl. Mobile of Mass. Corp., Ltd.* v. *Commissioner of Revenue*, *supra*, and will affirm its statutory interpretation if that interpretation is reasonable. *Boston Professional Hockey Ass'n* v. *Commissioner of Revenue*, *supra* at 285-286, 289-290.

The board stated that the requirement that a taxpayer possess a § 7 certificate at the time of purchase is "explicit and unambiguous" in the language of G. L. c. 64H, § 6 (*aa*). See *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640 (2000) ("Where the language of a statute is clear, courts must give effect to its plain and ordinary meaning and . . . need not look beyond the words of the statute itself"). We do not share the board's view that the statute is so clear on this question. The provision authorizing a sales tax exemption for buses provides only that the taxpayer must "hold at least one [§ 7] certificate" at the time the statement of tax exemption is issued, and does not set forth precisely whether a § 7 certificate must be held at the time of the purchase. Similarly, the statute is silent as to whether a statement of sales tax exemption must have issued prior to the time of purchase. See G. L. c. 64H, § 6 (*aa*). Nevertheless, if the board's interpretation of a tax statute is reasonable, then we "should not supplant [its] judgment," and the board's interpretation will be adopted. *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997), quoting *Massachusetts Med. Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988).

Given the purpose of the exemption and the practicalities of tax administration, we conclude that the board's decision that a taxpayer must hold a § 7 certificate at the time of purchase in order to be exempt from sales tax is a reasonable one. Although the tax on the sale of a bus is paid to the Registry of Motor Vehicles by the registered owner, see G. L. c. 64H, § 3 (*c*), the vendor must furnish required forms to the purchaser, *id.*, and must report the sales tax at the time of purchase, see G. L. c. 64H, § 5 (tax must be collected and reported by vendor at

time sale is made or, in case of buses, stated on evidence of sale issued by vendor at time of sale). In addition, department regulations state that a certificate of registration for a vehicle that is declared exempt under G. L. c. 64H, § 6 (*aa*), may not be issued "unless the [c]ommissioner has first approved the exemption." 830 Code Mass. Regs. § 64H.25.1(7)(j) (1993). The regulations provide also that, to establish an exemption, the carrier "must hold" a "Certificate of Exemption form" and that the certificate of exemption requires a § 7 certificate "stating that the motor bus *will* be used for scheduled intracity local service." *Id.* (emphasis added). Furthermore, a department administrative procedure states that "[a]n exemption certificate is effective as of the date on the certificate." See AP 101.1.3, 1 Official MassTax Guide at PWS-1312 (West 2009).

Thus, treating the sales tax exemption for buses as prospective from the date of issuance of the statement of exemption, which is dependent upon possession of a § 7 certificate, aids in administration of the tax statute for vendors and the department. See G. L. c. 64H, § 8 (establishing presumption that all sales of tangible personal property are subject to sales tax unless "the contrary is established"). The vendor needs to know when to impose the sales tax and must demonstrate that any exemption was proper. See G. L. c. 64H, §§ 2, 3, 5, 8. The board's determination avoids requiring the vendor to adjust repeatedly its records and the forms required by the commissioner potentially many years after a sale.

Moreover, as AA Transportation acknowledges, the sales tax exemption under G. L. c. 64H, § 6 (*aa*), is essentially a subsidy designed to encourage carriers to provide regular, fixed route, intracity bus service, a desirable form of public transportation. Given this objective, the policy is facilitated by the assurance that the taxpayer will actually provide regular route service, and that is achieved by requiring possession of the certificate at the time of the transaction to which the exemption applies.

Therefore, there was no error in the board's decision to interpret G. L. c. 64H, § 6 (*aa*), to permit a sales tax exemption only for purchases that take place when the taxpayer possesses a § 7 certificate of exemption at the time of purchase, and to uphold the commissioner's denial of AA Transportation's request

for an abatement of sales tax for buses purchased during the three tax years in question.[6] AA Transportation applied for a tax abatement in 2002, relying on a § 7 certificate issued for the first time in 2002, for purchases it had made between January 1, 1999, and December 31, 2001. The burden remains with the taxpayer to establish that it is entitled to an exemption, and the exemption will not be allowed unless the taxpayer demonstrates that it falls "clearly and unequivocally . . . within the terms of the exemption." *Western Mass. Lifecare Corp.* v. *Assessors of Springfield*, 434 Mass. 96, 101-102 (2001), quoting *Boston Symphony Orch., Inc.* v. *Assessors of Boston*, 294 Mass. 248, 257 (1936). Because AA Transportation did not have a § 7 certificate when it made the purchases at issue, it could not at that time have met one of the requirements for obtaining a statement of sales tax exemption under G. L. c. 64H, § 6 (*aa*).[7] Consequently, AA Transportation did not satisfy its burden of establishing that it was entitled to the exemption.

AA Transportation's argument that tax statutes are strictly construed in favor of the taxpayer, see *Boston Safe Deposit & Trust Co.* v. *State Tax Comm'n*, 346 Mass. 100, 105 (1963), incorrectly applies the standard for construing a statute that imposes a tax, rather than properly considering the "heavy burden," *New England Legal Found.* v. *Boston*, 423 Mass. 602, 613 (1996), that a taxpayer must meet to establish that it is exempt from a tax. See *Macy's East, Inc.* v. *Commissioner of Revenue*, 441 Mass. 797, 804, cert. denied, 543 U.S. 957 (2004), quoting *South Boston Sav. Bank* v. *Commissioner of Revenue*, 418 Mass. 695, 698 (1994) ("an exemption from taxation 'is a matter of special favor or grace' ").

AA Transportation's reliance on three letter rulings issued to

_____

[6]The fact that the commissioner erroneously issued the certificate of tax exemption to AA Transportation on August 2, 2002, while AA Transportation's application for a § 7 certificate was still pending, does not affect AA Transportation's eligibility for a tax exemption for purchases made in tax years 1999, 2000, and 2001; any certificate of tax exemption first issued in 2002 would have been inapplicable to those purchases.

[7]Because AA Transportation cannot meet the first statutory condition under G. L. c. 64H, § 6 (*aa*), we need not consider whether the board correctly interpreted the statute also to require that the taxpayer operate a local bus service exclusively within a single municipality in order to be eligible for the tax exemption.

individual taxpayers is also unavailing. Letter rulings are issued to individual taxpayers and are not properly relied upon by other taxpayers. See 830 Code Mass. Regs. § 62C.3.2(8)(a) (1993). In addition, the facts here are distinguishable from the circumstances underlying the letter rulings. AA Transportation is subject to the jurisdiction of the DTE as a common carrier. The exemptions granted by two of the letter rulings involved entities exempt from most DTE supervision and therefore ineligible to obtain a § 7 certificate. See G. L. c. 159A, § 1; G. L. c. 161B, § 6 (*i*). Moreover, the department agreed during the hearing that the exemption granted by the third letter ruling, to an entity under contract with a regional transit authority, was contrary to the plain language of the statute. The entity was not exempt from DTE jurisdiction according to the terms of G. L. c. 161B, § 6 (*i*), and therefore could have obtained a § 7 certificate.

*Conclusion.* Because AA Transportation did not have a certificate of public convenience and necessity in accordance with G. L. c. 159A, § 7, and was therefore ineligible for a sales tax exemption under G. L. c. 64H, § 6 (*aa*), when it purchased buses in 1999, 2000, and 2001, the board properly affirmed the commissioner's decision to deny AA Transportation an abatement of sales tax for those years.

*Decision of the Appellate Tax
Board affirmed.*