GLOBAL COMPANIES, LLC *vs.* COMMISSIONER OF REVENUE.

Suffolk. January 6, 2011. - April 19, 2011.

Present: IRELAND, C.J., SPINA, BOTSFORD, & GANTS, JJ.

*Taxation,* Sales tax, Abatement. *Administrative Law,* Judicial review, Substantial evidence, Agency's interpretation of statute. *Constitutional Law,* Commerce clause. *Words,* "Engaged in foreign and interstate commerce."

The Appellate Tax Board (board) did not err in denying a taxpayer's application for an abatement of sales tax that it had paid on the sale of fuel to a customer, in which the taxpayer claimed that the customer (a company providing daily ferry service) was "engaged in foreign and interstate commerce" within the meaning of the sales tax exemption contained in G. L. c. 64H, § 6 (*o*), where the board concluded that the customer, which was not involved in bringing foreign or out-of-State travelers into the Commonwealth and whose vessels traveled outside Massachusetts waters but embarked and disembarked only at points located in Massachusetts, did not "engage in foreign and interstate commerce" based on a reasonable interpretation under the statute's plain language and Federal jurisprudence, and where the taxpayer failed to meet its burden of demonstrating that Federal commerce clause jurisprudence mandated a broader interpretation of the statute. [494-502]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William E. Halmkin (Judith G. Edington* with him) for the plaintiff.

*Jennifer Grace Miller,* Assistant Attorney General, for the Commissioner of Revenue.

IRELAND, C.J. The plaintiff, Global Companies, LLC (Global), appeals from a decision of the Appellate Tax Board (board) denying Global's application for an abatement for sales tax it paid on the sale of fuel to a customer, Hyannis Harbor Tours, Inc., doing business as Hy-Line Cruises (Hy-Line), between July 1, 2002, and July 31, 2005, pursuant to G. L. c. 64H, § 6 (*o*). The board determined that Hy-Line did not "engage in foreign

and interstate commerce" within the meaning of the statute's sales tax exemption. Global argues error in the board's legal conclusions. Because we agree with the board that Hy-Line was not "engaged in foreign and interstate commerce" within the meaning of the statute, we affirm the board's decision.

*Facts and procedure.* We present the essential facts as found by the board. Global, a Massachusetts company with its principal place of business in Waltham, sells fuel to commercial and industrial interests in this country and elsewhere. Hy-Line, a Massachusetts company with a principal place of business in Hyannis, is licensed by the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority (Steamship Authority) to provide daily ferry service between Hyannis and Nantucket and seasonal service between Hyannis and Martha's Vineyard and between Nantucket and Martha's Vineyard (islands). At the relevant times, Hy-Line served Massachusetts residents, but its passengers regularly included out-of-State and foreign tourists. Its vessels were not authorized to carry automobiles or other freight. To avoid the shoal waters off Massachusetts, Hy-Line vessels routinely crossed into Federal waters (i.e., over three miles from land) and then reentered Massachusetts waters, making no intervening stops.

Hy-Line purchased fuel for its seven vessels exclusively from Global, and a sales tax was charged on each sale pursuant to G. L. c. 64H, § 2.[1] Global sought a sales tax abatement for Hy-Line under G. L. c. 64H, § 6 (*o*), which provides an exemption for "sales of fuel . . . to vessels engaged in foreign and interstate commerce."[2]

The Commissioner of Revenue denied Global's applications for abatement of the sales taxes and Global appealed to the board, which, after a hearing, issued its written decision in May, 2009. The board concluded that, based on the fact that Hy-Line's vessels did not ferry passengers between States or other countries and on the plain language of the statute, Hy-Line did

[1]Under G. L. c. 64H, § 2, as appearing in St. 1990, c. 121, § 43, a five per cent sales tax was imposed unless it was otherwise exempted. The issue addressed here is not affected by St. 2009, c. 27, § 53, which raised the sales tax to 6.25 per cent.

[2]Pursuant to G. L. c. 64H, § 2, the sales tax is imposed on vendors.

not engage in "foreign and interstate commerce." The board also concluded that the passage through Federal waters by Hy-Line's vessels did not amount to foreign commerce. Global appealed to the Appeals Court and we transferred the case to this court on our own motion.

*Discussion.* "We will not reverse a decision of the board 'if it is based on substantial evidence and on a correct application of the law.' " *Macy's East, Inc.* v. *Commissioner of Revenue,* 441 Mass. 797, 800, cert. denied, 543 U.S. 957 (2004), quoting *Bill DeLuca Enters., Inc.* v. *Commissioner of Revenue,* 431 Mass. 314, 315 (2000). "We have frequently recognized that an exemption from taxation 'is a matter of special favor or grace,' and that statutes granting exemptions are therefore to be strictly construed." *Macy's East, Inc.* v. *Commissioner of Revenue, supra* at 804, quoting *South Boston Sav. Bank* v. *Commissioner of Revenue,* 418 Mass. 695, 698 (1994). See *AA Transp. Co.* v. *Commissioner of Revenue,* 454 Mass. 114, 121 (2009) (applying same principle to sales tax exemption). "[A]n exemption [is] . . . to be recognized only where the property falls clearly and unmistakably within the express words of a legislative command." *South Boston Sav. Bank* v. *Commissioner of Revenue, supra,* quoting *State Tax Comm'n* v. *Blinder,* 336 Mass. 698, 703 (1958). "The burden is on the taxpayer to demonstrate entitlement to the exemption claimed." *Macy's East, Inc.* v. *Commissioner of Revenue, supra,* quoting *South Boston Sav. Bank* v. *Commissioner of Revenue, supra.* Although statutory interpretation is a duty of the court, "because the board is an agency charged with administering the tax law and has 'expertise in tax matters,'. . . we give weight to its interpretation of tax statutes . . . and will affirm its statutory interpretation if [it] is reasonable" (citations omitted). *AA Transp. Co.* v. *Commissioner of Revenue, supra* at 119, quoting *RHI Holdings, Inc.* v. *Commissioner of Revenue,* 51 Mass. App. Ct. 681, 685 (2001).

We begin by addressing Global's core contention that the board erred in rejecting its assertion that commerce clause jurisprudence was an appropriate analytical tool for discerning what the Legislature meant by the words "engaged in foreign and interstate commerce." The essence of Global's argument is that the phrase "foreign and interstate commerce" has been

given a broad interpretation under commerce clause juris-
prudence. The flaw in Global's argument is that it fails to ad-
dress the reason such a broad interpretation has been given by
various courts. The commerce clause of the United States Con-
stitution grants Congress the authority, inter alia, "to regulate
commerce with foreign nations, and among the several States."
Where courts consider the scope of congressional power under
the commerce clause, it has been interpreted broadly. See, e.g.,
*Heart of Atlanta Motel, Inc.* v. *United States*, 379 U.S. 241,
253-258 (1964) (Title II of Civil Rights Act of 1964 valid exer-
cise of "commerce power"). See also *United States* v. *Darby*,
312 U.S. 100, 118-120 (1941). However, under the so-called
dormant commerce clause, the United States Supreme Court has
"impos[ed] limits on the authority of State and local govern-
ments to regulate in ways that impinge on interstate or foreign
commerce." *Opinion of the Justices*, 428 Mass. 1201, 1203-
1204 (1998), citing *Oklahoma Tax Comm'n* v. *Jefferson Lines,
Inc.*, 514 U.S. 175, 179 (1995). Where a State tax has a suf-
ficient effect on the instrumentalities of interstate and foreign
commerce, it is subject to scrutiny under the dormant commerce
clause. *Opinion of the Justices, supra* at 1204-1205, quoting
*Perini Corp.* v. *Commissioner of Revenue*, 419 Mass. 763, 766
(1995). Such a tax will be valid only if it "is applied to an
activity with a substantial nexus with the taxing State, is fairly
apportioned, does not discriminate against interstate commerce,
and is fairly related to the services provided by the State."
*George S. Carrington Co.* v. *State Tax Comm'n*, 375 Mass. 549,
552 (1978), quoting *Complete Auto Transit, Inc.* v. *Brady*, 430
U.S. 274, 279 (1977). Here, we are not dealing with the scope
of congressional power under the commerce clause, nor has
Global claimed that the State sales tax exemption should be
subject to scrutiny under the dormant commerce clause.

In any event, as detailed *infra*, where the United States
Supreme Court has been called on to discern the congressional
intent underlying a Federal law created pursuant to its power
under the commerce clause, the Court's interpretation of that
intent has differed depending on whether the adjective modify-
ing "commerce" is "affecting" or "engaging." Compare *Allied-
Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 277 (1995) (phrase

"affecting commerce" indicates congressional intent to use full authority of its commerce clause powers), with *Circuit City Stores, Inc.* v. *Adams,* 532 U.S. 105, 115-116 (2001) (phrase "engaged in commerce" provides limited exception to Federal Arbitration Act [FAA]).

Global further argues, in essence, that because G. L. c. 64H, § 6 (*o*), is an additional exemption to the one provided in G. L. c. 64H, § 6 (*a*),[3] there is no support in the statutory structure for the board's central argument that G. L. c. 64H, § 6 (*o*), requires a narrow construction of "engaging" in interstate commerce. We disagree.

We conclude that although § 6 (*a*) provides exemptions for the same activities the United States Constitution already requires States to exempt, the plain language of § 6 (*o*) provides an additional, but limited, exception for the activity of "engag-[ing]" in foreign or interstate commerce. Thus, under the statute, even if a sales tax is valid because it does not burden interstate commerce, a business might qualify for a sales tax exemption under § 6 (*o*) if it demonstrates that its activities constitute "engag[ing]" in interstate or foreign commerce.[4]

Our conclusion is supported by the Supreme Court's analysis of the same language in a case involving the FAA. In *Circuit City Stores, Inc.* v. *Adams, supra,* the Court rejected an argument that Congress intended an exemption from coverage of the FAA for those "engaged in commerce" to be applied broadly so as to incorporate the full extent of its commerce powers. *Id.* at 115-116. In making that determination, it held that, although the phrase " 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause," the phrase " 'engaged in commerce' [is] understood to have a more limited reach." *Id.,* citing *United States* v. *American Bldg. Maintenance Indus.,* 422 U.S. 271, 279-280 (1975) (phrase "engaged in commerce" indicates limited assertion of Federal jurisdiction). Therefore, the Court concluded, the FAA exemp-

---

[3]General Laws c. 64H, § 6 (*a*), exempts "[s]ales which the commonwealth is prohibited from taxing under the constitution or laws of the United States."

[4]As the assistant attorney general stated at oral argument, for a vessel to qualify for the exemption, it must "move goods" from one jurisdiction to another, for example, from Massachusetts to New York.

tion had limited applicability. *Circuit City Stores, Inc.* v. *Adams, supra* at 119. As the board noted, in *United States Glue Co.* v. *Oak Creek,* 247 U.S. 321 (1918), the Court made a similar distinction between activity that affects foreign and interstate commerce and activity that constitutes engaging in foreign or interstate commerce.[5] *Id.* at 325, 329 (even though Wisconsin manufacturer engaged in interstate commerce, State tax did not so affect interstate commerce as to violate commerce clause).

Here, as the board noted, even if Hy-Line's vessels *affected* foreign and interstate commerce the language of the statute is not satisfied. There is no evidence in the record to establish that the vessels were "engaged" in foreign or interstate commerce. It is telling that, although Global argues that Hy-Line's vessels engaged in foreign and interstate commerce, it offers no analysis of the word "engaged." However, as the *Circuit City Stores* case (which Global does not cite) demonstrates, where Congress intended to *limit* those who were exempt from coverage of the FAA, it is reasonable to conclude that the Congress deliberately chose the word "engage" to express that limited purpose. By analogy, we conclude that the Legislature's use of the word "engaged" in G. L. c. 64H, § 6 (*o*), also was meant to express a limited application of the sales tax exemption. *Macy's East, Inc.* v. *Commissioner of Revenue,* 441 Mass. 797, 804 (2004).

Because § 6 (*o*) serves a different purpose from § 6 (*a*), and is not tied to the constitutional commerce clause prohibitions, we conclude that it was reasonable for the board to interpret § 6 (*o*) as a limited tax exemption. *AA Transp. Co.* v. *Commissioner of Revenue,* 454 Mass. 115, 119 (2009) (court will affirm board's reasonable construction of statute).

Global also argues that "[n]either the Commissioner nor the [b]oard cited any stated policy or other authority that circumscribes the [L]egislature's grant of the exemption under G. L. c. 64H, § 6 (*o*)," justifying the board's narrow reading. There was no error. It is Global's burden to show that it is entitled to

---

[5]As discussed *supra,* a State tax may affect interstate commerce but may not burden it so as to violate the commerce clause. See *George S. Carrington Co.* v. *State Tax Comm'n,* 375 Mass. 549, 552 (1978), quoting *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279 (1977) (citing factors that determine whether State tax is valid under commerce clause).

the exemption and it has failed to do so. See *AA Transp. Co.* v. *Commissioner of Revenue*, *supra* at 121. We have determined that the board's construction of § 6 (*o*) is reasonable.[6] *Macy's East, Inc.* v. *Commissioner of Revenue*, *supra* at 804 (statute granting tax exemption strictly construed).

In sum, the board's interpretation of the phrase "engaged in foreign and interstate commerce" is reasonable under the statute's language and Federal jurisprudence. Global has not met its burden in demonstrating why, without challenging the constitutionality of the statute under the commerce clause, the board must use commerce clause jurisprudence to discern the intent of our Legislature.

Global next argues that Hy-Line's vessels are engaged in foreign and interstate commerce because they are part of an essential transportation system[7] that brings foreign and out-of-State travelers to the islands, and because the vessels travel into Federal (and international) waters during their trips.

Concerning the presence of foreign and out-of-State travelers on the vessels, Global first argues that the board erred in rejecting its argument that the focus of the statute is on the activities of the passengers rather than on the activities of the vessels themselves. There was no error.

Most important, Global's focus on the activities of the passengers is contrary to the plain language of the statute, which, as the board stated, explicitly focuses on the activities of the vessels. G. L. c. 64H, § 6 (*o*) (exempting "sales of fuel . . . *to vessels* engaged in foreign and interstate commerce" [emphasis

[6]We also disagree with Global that the board erred in relying on a dictionary definition of the word "interstate," as "[i]nvolving, existing between, or connecting two or more states," to reject Global's argument that the presence of out-of-State passengers on the vessels constituted interstate commerce within the meaning of the statute. See, e.g., *Ten Local Citizens Group* v. *New England Wind, LLC*, 457 Mass. 222, 229 (2010) (relying on dictionary to define term in regulation).

[7]Global argues that the essential character of Hy-Line's service relates to its being licensed by the Steamship Authority, which was created to "provide adequate transportation of persons and necessaries of life for the islands." St. 1960, c. 701, § 1. We agree with the board that the fact that Hy-Line vessels were so licensed is immaterial in determining the issue before us. Global's conclusory statement that Hy-Line is "not merely offering a recreational experience or retail product" is insufficient to meet its burden to show that its vessels "engage" in foreign and interstate commerce.

added]). See *Massachusetts Broken Stone Co.* v. *Weston,* 430 Mass. 637, 640 (2000) (where language of statute is clear, court need not look beyond statute itself). Thus, to qualify for the exemption, Global must demonstrate that Hy-Line's vessels are engaged in foreign and interstate commerce.

Despite the statute's plain language, Global argues that we should be guided by *Opinion of the Justices,* 428 Mass. 1201 (1998). The opinion is not apt. At issue was a proposed two-tiered surcharge on vehicle rentals under which Boston residents would pay three dollars and all others, including out-of State and foreign residents, would pay ten dollars. *Id.* at 1205. The court held that the surcharge on the individual transactions of out-of State and foreign residents was a facially discriminatory measure that burdened interstate commerce in violation of the dormant commerce clause. *Id.* at 1206, 1208. See *George S. Carrington Co.* v. *State Tax Comm'n,* 375 Mass. 549, 552 (1978) (tax that discriminates against interstate commerce is invalid).

Unlike the proposed surcharge in *Opinion of the Justices, supra,* here there is no claim that the sales tax burdens the commerce clause. The sales tax is imposed not on individuals, but on a transaction for the purchase of fuel that is conducted entirely between two Massachusetts companies, on Massachusetts soil. The board's conclusion that, because Hy-Line was not involved in bringing any foreign or out-of-State travelers into the Commonwealth and that its dealings with them was "clearly domestic" is supported by our case law. In *H.P. Hood & Sons* v. *Commonwealth,* 235 Mass. 572, 575, 577 (1920), this court held that, although transporting milk from other States into Boston was interstate commerce, its subsequent processing, delivery, and sales were purely intrastate and subject to an income tax. The court stated that the sales "are as clearly domestic transactions as are sales by grocers or by any other retail dealers from local stocks of goods" and the "business . . . is indistinguishable from the sales by any other retail or wholesale dealer who sells from a stock of goods bought in a foreign market and brought to his store here by interstate commerce." *Id.* at 577.

Moreover, Global's citation to cases that hold that tourism is an activity in interstate commerce does not aid its argument

because those cases deal with claims that various State or local statutes, regulations, or ordinances violated the commerce clause, whereas here the challenge is to the board's interpretation of a valid sales tax.[8]

Concerning the fact that, for safety reasons, the vessels travel outside of Massachusetts waters to and from the islands, we agree with the board that this foray does not transform Hy-Line's routes into foreign commerce within the meaning of the statute. As the board pointed out, over one century ago, the United States Supreme Court rejected the argument that "the mere passage over the soil of another State" in the transportation of freight or passengers between two points in one State "renders that business foreign." *Lehigh Valley R.R.* v. *Pennsylvania*, 145 U.S. 192, 202 (1892). In the *Lehigh Valley* case, a certain Pennsylvania railroad route passed into New Jersey, but "[t]here was no breaking of bulk or transfer of passengers in New Jersey. The point of departure and the point of arrival were alike in Pennsylvania." *Id.* at 201. The Court held that this circumstance was not interstate commerce, noting that the term does "not embrace that commerce which is completely internal . . . or between different parts of the same State, and which does not extend to or affect other States." *Id.* at 200, quoting *Gibbons* v. *Ogden*, 22 U.S. (9 Wheat.) 1, 189 (1824). The Court reiterated, "commerce . . . undoubtedly is traffic, but it is something more; it is intercourse." *Lehigh Valley R.R.* v. *Pennsylvania, supra.*

Here, we agree with the board that, like the passengers in the *Lehigh Valley* case, passengers on Hy-Line's vessels could not embark or disembark in Federal waters, but only did so at points located in Massachusetts. Thus, there was no "intercourse" conducted outside of Massachusetts.

---

[8]See *Gibbs* v. *Babbitt*, 214 F.3d 483, 486-487, 493 (4th Cir. 2000), cert. denied sub nom. *Gibbs* v. *Norton*, 531 U.S. 1145 (2001) (rejecting challenge to United States Fish and Wildlife Service regulation concerning red wolves, under commerce clause); Young *vs.* Coloma-Agaran, U.S. Dist. Ct., No. CIV.00-00774HG-BMK (D. Haw. Dec. 27, 2001) (where Federal license allowed tour boat to sail into certain bay, State statute prohibiting such travel violated Federal preemption and commerce clause); *Duck Tours Seafari, Inc.* v. *Key West*, 875 So. 2d 650, 652, 657-658 (Fla. Dist. Ct. App. 2004) (reversing summary judgment and remanding case to determine whether city ordinance granting monopoly to two tour operators burdened interstate commerce in violation of commerce clause).

The cases on which Global relies to bolster its argument that travel into Federal waters was "engag[ing] in foreign and interstate commerce" within the meaning of the statute are not apt. Three cases concerned State policies that burdened interstate commerce; each explicitly distinguished the *Lehigh Valley* case. See *Central Greyhound Lines, Inc.* v. *Mealey*, 334 U.S. 653, 656-661 (1948) (tax on gross receipts burdens interstate commerce); *Hanley* v. *Kansas City S. Ry.*, 187 U.S. 617, 619, 621 (1903) (railroad rates applied to out-of-State travel burdens interstate commerce); *Conlin Buss Lines, Inc.* v. *Old Colony Coach Lines, Inc.*, 282 Mass. 498, 503, 505 (1933) (travel from Massachusetts to Connecticut, however negligible, is interstate commerce and therefore not subject to Massachusetts regulation). One case, *Lord* v. *Steamship Co.*, 102 U.S. 541 (1880), was distinguished by the *Lehigh Valley* case. *Lehigh Valley R.R.* v. *Pennsylvania, supra* at 202, 203.[9]

Finally, Global seems to argue that the board made an error of law in determining that Hy-Line's vessels passed through Federal and not international waters.[10] To support its argument it included citations to cases and statutes in its posthearing brief to the board, but presented no evidence in this regard at the hearing. We need not belabor this argument because, even if it is true that the vessels passed into international waters, Global has failed to meet its burden to show that the vessels were "engaged" in foreign commerce while doing so. See *Circuit City Stores, Inc.* v. *Adams*, 532 U.S. 105, 112 (2001) ("engaged" in commerce has limited meaning); *Lehigh Valley R.R.* v. *Pennsylvania, supra* at 200 ("Commerce . . . undoubtedly is traffic, but it is something more; it is intercourse").[11]

---

[9]In *Lord* v. *Steamship Co.*, 102 U.S. 541, 543 (1880), the issue before the Court was the extent of congressional authority to regulate the liability of owners of vessels that were undisputedly navigating the high seas. Here, even if the commerce clause were implicated, the dormant commerce clause would be at issue, not the scope of congressional power under the commerce clause.

[10]We note that the board made its finding that the vessels passed through Federal and not international waters based on the testimony of one of Global's witnesses and a map depicting the travel routes Hy-Line used that was introduced as an agreed exhibit.

[11]Global's reliance on *Florida Dep't of Revenue* v. *New Sea Escape Cruises, Ltd.*, 894 So. 2d 954 (Fla. 2005), to demonstrate that Hy-Line vessels traveled in international waters fails. The case, which also concerns the commerce

*Conclusion.* For the reasons set forth above, we affirm the decision of the board denying Global's application for a sales tax abatement pursuant to G. L. c. 64H, § 6 (*o*).

*So ordered.*

---

clause, is readily distinguishable. It was undisputed that the vessel at issue, which left Florida waters to conduct gambling operations and traveled to Freeport, the Bahamas, was "*engaged* in . . . foreign commerce" (emphasis added). *Id.* at 956. The issue was what per cent of the time was spent in Florida waters, subjecting the operations to a use tax on "proceeds from a gambling concession agreement, the gambling equipment on the vessel, and proceeds from a food concession agreement." *Id.*