BROWN, RUDNICK, FREED & GESMER *vs.* BOARD OF
ASSESSORS OF BOSTON.

Suffolk. January 6, 1983. — May 31, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Taxation*, Personal property tax: exemption. *Corporation*, Domestic
business corporation. *Words*, "Domestic business corporation."

A corporation organized under G. L. c. 156B for the stated purpose of en-
gaging in the business of leasing personal property, which was wholly
owned by a partnership engaged in the practice of law, which limited
its business activities to leasing office equipment to the partnership,
and which did not appear to conduct its business in any way separate
from the partnership was not a "domestic business corporation" for
purposes of exemption from local personal property tax under G. L.
c. 59, § 5, Sixteenth (2). [301-306]
Although this court held that the Appellate Tax Board did not err in con-
cluding that a certain corporation wholly owned by a partnership en-
gaged in the practice of law and limiting its business activities to leas-
ing office equipment to the partnership was not a "domestic business
corporation" within the meaning of G. L. c. 59, § 5, Sixteenth (2), it
remanded the case to the Board for a determination whether the cor-
poration was a "Massachusetts corporation" under c. 59, § 5, Sixteenth
(1), and whether local personal property taxes on the equipment leased
by the corporation to the partnership had been properly assessed to the
partnership. [306-307]

APPEAL from a decision of the Appellate Tax Board.

*M. Robert Dushman* for the plaintiff.

*Peter Antell*, Special Assistant Corporation Counsel, for
the defendant.

NOLAN, J.  This is an appeal from a decision of the Ap-
pellate Tax Board (board) in favor of the board of assessors
of the city of Boston (assessors), which denied applications
for abatement of certain personal property taxes paid by the
appellant, Brown, Rudnick, Freed & Gesmer (BRFG), to

389 Mass. 298                                                        299

Brown, Rudnick, Freed & Gesmer v. Board of Assessors of Boston.

the city of Boston for fiscal years 1978 through 1981. Although we agree with the decision of the board that the corporation formed and wholly owned by BRFG is not a "domestic business corporation" within the meaning of G. L. c. 59, § 5, Sixteenth (2),[1] we remand the case to the board for further consideration in light of this opinion.

We summarize the facts found by the board. BRFG is a partnership in the practice of law, with offices in Boston. In December, 1975, BRFG organized a corporation, Briefing, Inc. (corporation), under G. L. c. 156B, for the stated purpose of engaging in the business of leasing personal property.[2] From the time of incorporation to the present, all officers and directors of the corporation have been partners in BRFG. After formation of the corporation, BRFG transferred title to all its personal property to the corporation in consideration of the issuance of all shares of the corporation's capital stock to BRFG, and a promissory note in the principal sum of $65,000. BRFG is and has been the only stockholder in the corporation. The personal property transferred included business and office equipment, furniture, furnishings, books, publications, and periodicals. The corporation then made an inventory of the personal property and leased it back to BRFG under a one-year lease which is automatically extended from year to year unless terminated by either party upon ninety days' notice. The lease

---

[1] General Laws c. 59, § 5, exempts certain property from local taxation. Clause Sixteenth specifies which property owned by corporations shall be deemed exempt. Paragraph (2) of cl. Sixteenth, as appearing in St. 1979, c. 777, § 1, provides in pertinent part: "(2) In the case of (a) domestic business corporation . . . as defined in section thirty of chapter sixty-three, all property owned by such corporation other than the following:— real estate, poles, underground conduits, wires and pipes, and machinery used in the conduct of the business, which term, as used in this clause, shall not be deemed to include stock in trade or any personal property directly used in connection with dry cleaning or laundering processes or in the refrigeration of goods or in the air-conditioning of premises or in any purchasing, selling, accounting or administrative function."

[2] The articles of organization also empower the corporation "to carry on any business permitted by the laws of the Commonwealth . . . under Chapter 156B."

has been in effect during all the years in question. There have been no amendments to the lease, but the corporation has leased additional equipment to BRFG at a rate predetermined in the lease from time to time. The corporation provides the office supplies used by BRFG in its daily activities; BRFG rents or leases office equipment from sources other than the corporation.

Although empowered to do so, the corporation has never leased personal property to any entity except BRFG. The corporation has never solicited business from any other entity. The leasing arrangement with BRFG is its exclusive source of income.

The corporation paid a corporate excise tax in each relevant year and the amount of that tax increased substantially in 1980, with the increase attributable to accelerated depreciation taken in earlier years, rather than to any increase in income or business activity. Any increase in rental income to the corporation was attributable to the corporation's purchase of additional equipment and its subsequent lease to BRFG, but the acquisition of equipment was to accommodate the growth needs of BRFG. There was no evidence that the corporation's business was separate in any way from the business of BRFG, or that the corporation had any employees. There was also no evidence concerning the amounts of any income, expenses, gains, or losses of the corporation in any of the relevant years.[3] The business address of the corporation was the same as that of BRFG. The board ruled and BRFG admitted that the lease was not an arm's-length transaction.

Since formation of the corporation, BRFG has claimed that it owned no personal property of any kind and has filed a statutory "Form of List" so indicating with the board every year since 1976. See G. L. c. 59, § 29. However, in each of the relevant years, BRFG has been assessed and has

---

[3] There was, however, testimony that the corporation made nominal profits in some early years and a more substantial profit in later years. Our conclusion today makes irrelevant any discrepancy, if there be any, between this evidence and the board's findings.

paid a personal property tax to the city of Boston. In each instance, the personal property tax paid by BRFG was greater than the excise tax paid by the corporation in the same year.

The board heard BRFG's appeal in September, 1981, and issued its opinion in February, 1982, upholding the assessors. The board concluded that "the Corporation's activities were not undertaken for the purpose of profit or gain; wherefore, the Corporation was not engaged in 'business' and should not be afforded recognition as a viable business entity for purposes of exemption under G. L. c. 59, § 5, Sixteenth (2)."

In making its determination that the corporation was not a "domestic business corporation" within the meaning of the statute, the board applied the definition of "business" found in *Whipple* v. *Commissioner of Corps. & Taxation*, 263 Mass. 476, 485-486 (1928): "'Business' is a word of large signification and is not susceptible of exact definition applicable to all cases. When the purpose of the statute's taxing income is considered, the word 'business,' as used in the section relating to the deduction of expenses, must be held to refer to an activity which occupies the time, attention and labor of men for the purpose of livelihood, profit or gain." BRFG contends that use of this definition was improper because it ignored the definition of "domestic business corporation" referred to in G. L. c. 59, § 5, Sixteenth (2), and that in any event the corporation qualified because it was a corporation carried on for the purpose of profit.[4]

General Laws c. 59, § 5, Sixteenth (2), provides, in essence, that all property, with certain exceptions not material here, of a "domestic business corporation . . . as defined in section thirty of chapter sixty-three" shall be exempt from personal property taxes. In 1957, when this sec-

---

[4] BRFG also argues that the corporation should be entitled to an exemption because it is a "Massachusetts corporation" within the meaning of G. L. c. 59, § 5, Sixteenth (1). We refer to this argument, *infra* at 306-307 & n.13.

tion was enacted basically in its present form, G. L. c. 63, § 30 (1), did contain a definition of "domestic business corporations." That definition, as amended, was removed in 1975 and in its place was inserted a definition of "domestic corporations." St. 1975, c. 684, § 45. However, that definition and the definition of "domestic business corporation" in its final amended form before its removal are substantially the same.[5,6] BRFG contends that the corporation met the terms of either definition and therefore should be entitled to an exemption.[7]

We need not decide which definition applies because there is no dispute that the corporation was, in form, organized under G. L. c. 156B. This bare statutory compliance does not end the inquiry, however. To hold that an entity is a "domestic business corporation" within the mean-

---

[5] General Laws c. 63, § 30 (1), as appearing in St. 1971, c. 555, § 32, defined "[d]omestic business corporation": "[E]very corporation organized under or subject to chapter one hundred and fifty-six, chapter one hundred and fifty-six A, chapter one hundred and fifty-six B or chapter one hundred and eighty; provided, however, that said term shall not apply to corporations organized under the provisions of section ten of chapter one hundred and fifty-seven, domestic manufacturing corporations as defined in section thirty-eight C or corporations exempt from taxation under the provisions of section five hundred and one of the Federal Internal Revenue Code, as amended and in effect for the taxable year."

[6] General Laws c. 63, § 30 (1), as appearing in St. 1975, c. 684, § 45, defined "[d]omestic corporations": "[E]very corporation organized under or subject to chapter one hundred and fifty-six, chapter one hundred and fifty-six A, chapter one hundred and fifty-six B or chapter one hundred and eighty which has privileges, powers, rights or immunities not possessed by individuals or partnerships; provided, however, that said term shall not apply to corporations organized under the provisions of section ten of chapter one hundred and fifty-seven, domestic manufacturing corporations as defined in section thirty-eight C or corporations exempt from taxation under the provisions of section five hundred and one of the federal Internal Revenue Code, as amended and in effect for the taxable year."

[7] If the corporation is a "domestic business corporation," the machinery which it owns and leases would appear to be "stock in trade" of the company and as such would be exempt from local taxation under G. L. c. 59, § 5, Sixteenth (2), even though in the hands of the lessee. See *Springfield Sugar & Prods. Co.* v. *State Tax Comm'n*, 381 Mass. 587, 589 (1980), and cases cited. However, we do not decide this issue.

ing of G. L. c. 59, § 5, Sixteenth (2), merely because it is organized in a manner consistent with the corporation statutes would elevate form over substance. See *Britt* v. *United States*, 431 F.2d 227, 237 (5th Cir. 1970); *Haberman Farms, Inc.* v. *United States*, 305 F.2d 787 (8th Cir. 1962). When, in an analogous context, a corporation has claimed an exemption as a charitable institution under G. L. c. 59, § 5, Third, we have refused to allow form to control. Instead, we have looked to the declared purposes of and the actual work performed by the corporation to determine whether it was in fact operated for charitable purposes.[8] See *Assessors of Boston* v. *Vincent Club*, 351 Mass. 10 (1966), and cases cited; *Norwood* v. *Norwood Civic Ass'n*, 340 Mass. 518 (1960).

We think that a similar inquiry is appropriate here to determine whether a corporation claiming exemption under G. L. c. 59, § 5, Sixteenth (2), is operated for dominantly business purposes.[9] We think, also, that the definition of "business" used by the board, "an activity which occupies the time, attention and labor of men *for the purpose of livelihood, profit or gain*" (emphasis supplied), is apt. *Whipple* v. *Commissioner of Corps. & Taxation*, 263 Mass. 476, 485-486 (1928).

"[T]he burden of proof is upon the one claiming an exemption from taxation to show clearly and unequivocally

---

[8] We have also disregarded the corporate entity when necessary to achieve results consonant with law, equity, or public policy. See, e.g., *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 618-620 (1968); *Gardiner* v. *Treasurer & Receiver Gen.*, 225 Mass. 355, 367 (1916). See also C.A. Peairs, Business Corporations § 646 (2d ed. 1971), and cases cited. Our inquiry here, of course, is not whether the corporation was a "dummy" or "sham" corporation or the "alter ego" of BRFG, but whether it was a domestic business corporation, as that term is used in G. L. c. 59, § 5, Sixteenth (2).

[9] This inquiry is also similar to the inquiry we make in determining the dominant use of a property when an exemption under G. L. c. 59, § 5, Tenth, is claimed because the property is used for religious purposes. See *United Church of Religious Science* v. *Assessors of Attleboro*, 372 Mass. 280, 284-285 (1977); *Assessors of Boston* v. *Lamson*, 316 Mass. 166, 173, 174 (1944).

that he comes within the terms of the exemption." *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 257 (1936). Because the board's decision is "final as to findings of fact," G. L. c. 58A, § 13, the first question on this appeal is whether a conclusion that the corporation is a "domestic business corporation" is required as a matter of law from the board's findings. See *First Data Corp.* v. *State Tax Comm'n,* 371 Mass. 444, 446 (1976).

There is no doubt that the corporation's stated purpose would allow it to conduct a business that would qualify for exemption under G. L. c. 59, § 5, Sixteenth (2). This is a necessary element of the claim for exemption but it does not end the inquiry. See *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket,* 320 Mass. 311, 313 (1946). It must still be shown that the corporation was, in fact, engaged in business.

We have previously summarized the board's findings and conclusion on this latter point. We see nothing in these findings inconsistent with the board's ultimate conclusion that the corporation was not an "entity conducted for gain or profit." BRFG contends that the corporation was engaged in a profit-seeking venture and so is within the *Whipple* definition of a "business." [10]

In *Higgins* v. *Smith,* 308 U.S. 473 (1940), the issue was whether a taxpayer who sold securities to a corporation wholly owned and controlled by him could realize a loss on the exchange for income tax purposes. In denying the deduction, the Court relied in part on the "natural conclusion that transactions, which do not vary control or change the flow of economic benefits, are to be dismissed from consideration." *Id.* at 476. The Court also stated that "the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed

---

[10] There was evidence at the hearing that the corporation did not reduce its rental rate to BRFG even though the corporation's depreciation policy would have made a reduction possible.

for doing business or carrying out the challenged tax event is unreal or a sham, may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property." *Id.* at 477-478.

The board implicitly and correctly recognized these principles when it concluded that the corporation was not organized for profit. Indeed, the board quoted the above passage from *Higgins* v. *Smith* in its opinion. On the evidence before it, the board could reasonably conclude that the lease arrangement between the corporation and BRFG did not "vary control or change the flow of economic benefits," *id.* at 476, between the two entities. The board was justified, therefore, in examining closely the true nature of the relationship between the corporation and BRFG. The board's ultimate findings were warranted that the activities of the corporation were not undertaken for profit and that it was not entitled to an exemption.[11]

Our holding is not contrary to the line of cases, exemplified by *United States* v. *Cumberland Pub. Serv. Co.,* 338 U.S. 451, 455-456 (1950), and by *A.P. Green Export Co.* v. *United States,* 284 F.2d 383, 390 (Ct. Cl. 1960), and relied on by BRFG, which stand for the propositions that a taxpayer may organize his affairs in whatever legal form he desires so as to minimize tax consequences and that the government may not penalize the taxpayer for his choices even if the choices are based on a desire to avoid taxation. We do not interpret the board's decision as being based on a ruling that a corporation set up to do business only with its parent entity could never qualify as a "domestic business corporation." Rather, we view the board's decision as bot-

---

[11] The fact that the corporation did not reduce its rates when it might have done so does not compel a contrary conclusion. Nor does the fact that the corporation recorded a profit from its transactions necessitate a conclusion that it was organized for the purposes of profit although it is, of course, a factor.

tomed simply upon a finding that BRFG has failed to establish that the corporation performs any function other than to shelter BRFG from personal property tax liability.[12] See *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket*, 320 Mass. 311, 313 (1946). The language of Judge Learned Hand in *National Investors Corp.* v. *Hoey*, 144 F.2d 466, 468 (2d Cir. 1944), is particularly appropriate on this issue: "[T]o be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning; and that escaping taxation is not 'business' in the ordinary meaning."

To conclude, as we do, consistent with the board's decision that the corporation is not a domestic business corporation as that term is used in G. L. c. 59, § 5, Sixteenth (2), does not terminate the controversy. BRFG tried its case before the board by arguing that it did not own the property assessed to it and by attempting to show that the corporation which held title to the property was a separate corporate entity. The board's sole determination was to the effect that the corporation was not a domestic business corporation for purpose of the property tax. This determination leaves unanswered the question whether the corporation is a "Massachusetts corporation" as that term is used in G. L. c. 59, § 5, Sixteenth (1),[13] and is thus entitled to an ex-

---

[12] For this reason, we need not concern ourselves what quantum of legitimate business activity suffices to establish that a corporation doing business with its parent entity qualifies as a "domestic business corporation" within the meaning of G. L. c. 59, § 5, Sixteenth (2). See *Coca-Cola Bottling Co.* v. *United States*, 443 F.2d 1253, 1254 (10th Cir. 1971); *Britt* v. *United States*, 431 F.2d 227, 237 (5th Cir. 1970).

[13] That clause, in pertinent part, provides for exemption from local taxation: "In the case of . . . a Massachusetts corporation subject to taxation under chapter sixty-three other than a [domestic business corporation, a foreign corporation, or a domestic or foreign manufacturing corporation] . . . all property owned by such . . . corporation other than the following:— real estate, poles, underground conduits, wires and pipes, and machinery used in manufacture or in supplying or distributing water . . . ."

emption.[14]   Although we agree with the board's decision that the corporation was not entitled to an exemption as a "domestic business corporation," the board's decision must be reversed so that the board may determine whether the corporation is a "Massachusetts corporation" within the meaning of G. L. c. 59, § 5, Sixteenth (1), and, if so, is entitled to an exemption or, if not, whether the tax is properly assessed to BRFG.   The case is remanded to the Appellate Tax Board for further proceedings consistent with this opinion.[15]

*So ordered.*

---

[14] If it is determined that the property is subject to local taxation, its value would be deductible in determining the corporate excise tax. G. L. c. 63, § 32 (*a*).   There would thus be no question of double taxation. "That the [corporation] paid a corporate excise tax based upon a computation which may have erred in failing to make such a deduction cannot avail [BRFG]." *Collector of Taxes* v. *Cigarette Serv. Co.*, 325 Mass. 162, 166-167 (1950).   *Springfield Sugar & Prods. Co.* v. *State Tax Comm'n*, 381 Mass. 587, 590-591 (1980).

[15] Our conclusion today should not be read as a censure of BRFG. Their conduct is in no way a proper subject for adverse criticism.