## MASSPCSCO vs. Board of Assessors of Woburn & another.[1]

No. 10-P-1286.

Suffolk. May 9, 2011. - September 15, 2011.

Present: BERRY, TRAINOR, & VUONO, JJ.

*Taxation,* Personal property tax: abatement, Personal property tax: exemption, Foreign corporation, Judicial review. *Words,* "Engaged in business."

The Appellate Tax Board did not err in denying a taxpayer's applications for abatement of certain personal property taxes, where the taxpayer failed to meet its burden of demonstrating that it was entitled to the "stock in trade" exemption from property tax set forth in G. L. c. 59, § 5, Sixteenth (2), given that the taxpayer, a foreign statutory trust, had been created solely for the purpose of avoiding tax liability and was not a viable business entity engaged in substantial business activities. [401-405]

APPEAL from a decision of the Appellate Tax Board.

*Eric S. Tresh,* of Georgia (*Zachary T. Atkins,* of Georgia, & *William T. Hogan, III,* with him) for the taxpayer.

*Richard P. Bowen* for board of assessors of Woburn.

*Stephen W. DeCourcey* (*John M. Lynch* with him) for board of assessors of Springfield.

The following submitted briefs for amici curiae:

*Anthony M. Ambriano* for board of assessors of Boston.

*Martha Coakley,* Attorney General, & *Daniel J. Hammond,* Assistant Attorney General, for Commissioner of Revenue.

*Joseph X. Donovan & David J. Nagle* for The Broadband Tax Institute.

TRAINOR, J. This is an appeal from a decision of the Appellate Tax Board (board) in favor of the assessors of the cities of Woburn and Springfield (assessors), which denied applications for abatement of certain personal property taxes paid by

[1]Board of Assessors of Springfield.

MASSPCSCO. Because we agree that MASSPCSCO was not entitled to the "stock in trade" exemption from property tax set forth in G. L. c. 59, § 5, Sixteenth (2), we affirm the board's decision.

We summarize the facts as found by the board. Sprint Spectrum, L.P. (Sprint Spectrum), was formed as a Delaware limited partnership on March 28, 1995, to provide wireless telecommunications services to customers throughout the United States. On June 3, 1996, Sprint Spectrum registered with the Secretary of the Commonwealth as a foreign limited partnership. In an effort to build Sprint Spectrum's wireless communications network (network), Sprint Spectrum Equipment Company, L.P. (EquipmentCo), another Delaware limited partnership, was formed on May 15, 1996, and subsequently registered in the Commonwealth as a foreign limited partnership on July 19, 1996. Substantially all of the partnership interests in EquipmentCo were owned by Sprint Spectrum. Shortly after its formation, EquipmentCo began purchasing personal property to be used in the network and leasing all of its network property to Sprint Spectrum.

From 1999 through 2002, Sprint Spectrum filed Form 5941 tax returns with the Commissioner of Revenue (commissioner) pursuant to G. L. c. 59, § 41. During these years, Sprint Spectrum was not required to report the majority of its network assets, including its towers, antennas, and switching equipment, because such items were deemed exempt from taxation. The aggregate valuation certified by the commissioner for the personal property reported by Sprint Spectrum was $330,800 for fiscal year 2000, $330,800 for fiscal year 2001, $1,703,000 for fiscal year 2002, and $1,762,900 for fiscal year 2003.

On January 13, 2003, the commissioner notified "telephone and telegraph filers" of a change in the valuation process. Beginning with fiscal year 2004, filers of Form 5941 organized as partnerships or limited liability companies would be required to report "all machinery, including switching equipment, used for telephone and telegraph purposes." Entities filing as corporations, however, would need to report only "poles and wires over private property, underground conduits, wires and pipes in public or private property, and electric generating machinery." Complying with the commissioner's orders, Sprint Spectrum

filed its fiscal year 2004 return and reported all the machinery and equipment located in the Commonwealth that it had leased from EquipmentCo and used in the network. As a result, the commissioner certified an aggregate taxable value of $172,899,300 on the property, a figure nearly 100 times larger than the certified value of Sprint Spectrum's personal property in fiscal year 2003.

Faced with an overwhelming increase in tax liability, Sprint Spectrum decided to restructure its operations and sought counsel from outside professionals at Deloitte & Touche, LLP (Deloitte). Deloitte advised Sprint Spectrum to place its otherwise taxable Massachusetts assets in an entity that would be recognized as a corporation so that Sprint Spectrum could benefit from the relevant personal property tax exemptions. Deloitte also recommended, among other things, that the entity be structured to engage in third-party transactions and that any leases from the entity to Sprint Spectrum be at "arms' length prices."

In accordance with Deloitte's advice, EquipmentCo executed a trust agreement forming MASSPCSCO as a Delaware statutory trust, thereby permitting Sprint Spectrum to obtain Massachusetts corporate property tax exemptions without any Federal income tax consequences. On December 22, 2003, EquipmentCo transferred all of its tangible network property located in Massachusetts, including cellular towers, antennas, and switches, to MASSPCSCO as a contribution to capital valued at net book cost without any other consideration. No sales tax was paid in connection with the transaction. On December 23, 2003, Sprint Spectrum and EquipmentCo terminated their prior lease agreement. The same day, Sprint Spectrum and MASSPCSCO executed a lease agreement concerning the recently transferred network property. Pursuant to the lease agreement, Sprint Spectrum paid rent to MASSPCSCO on a monthly basis, with lease factors calculated to produce a rate of return of nine percent. This same rate of return was used for all categories of leased property, though there was no evidence establishing its relationship to market value or how the figure was calculated.[2]

Contrary to Deloitte's advice, MASSPCSCO did not lease

---

[2]The accounting firm of Ernst & Young recommended that MASSPCSCO effectuate a lease factor schedule that would assign different lease factors to separate categories of properties, thereby more accurately reflecting market values. MASSPCSCO did not implement these recommendations.

property to any person or entity other than Sprint Spectrum. MASSPCSCO had no employees and did not conduct any regular business activities other than owning and leasing network equipment to Sprint Spectrum. In addition, MASSPCSCO did not purchase the equipment it leased to Sprint Spectrum. Rather, Sprint Spectrum purchased the equipment and marked the purchase against MASSPCSCO's account on a common ledger. Moreover, Sprint Spectrum and MASSPCSCO did not maintain separate bank accounts. Instead, all lease payments made by Sprint Spectrum to MASSPCSCO were implemented by ledger entries in Sprint Spectrum's books.

The board of assessors of Springfield issued assessments against MASSPCSCO for additional personal property taxes of $8,356.68 for fiscal year 2005 and $8,271.51 for fiscal year 2006. Likewise, the board of assessors of Woburn issued assessments against MASSPCSCO for additional personal property taxes of $330,682.90 for fiscal year 2006 and $215,508.85 for fiscal year 2007. For each of the assessments, MASSPCSCO made timely applications for abatement, all of which were ultimately denied. MASSPCSCO subsequently filed appeals from the assessments under formal procedure pursuant to G. L. c. 58A, §§ 6-7, and G. L. c. 59, §§ 64-65. Following a full hearing, the board ruled in favor of the assessors on September 10, 2009. Specifically, the board determined that although MASSPCSCO was a foreign corporation within the meaning of G. L. c. 63, § 30, it was not entitled to the "stock in trade" exemption under G. L. c. 59, § 5, Sixteenth (2), because it was not "engaged in business" as required by *Brown, Rudnick, Freed & Gesmer* v. *Board of Assessors of Boston*, 389 Mass. 298, 304 (1983) *(Brown Rudnick)*. The board also concluded that MASSPCSCO had failed to prove that it was not the result of a sham transaction.

*Discussion.* "We will not reverse a decision of the board 'if it is based on substantial evidence and on a correct application of the law.' " *Global Cos., LLC* v. *Commissioner of Rev.*, 459 Mass. 492, 494 (2011), quoting from *Macy's East, Inc.* v. *Commissioner of Rev.*, 441 Mass. 797, 800, cert. denied, 543 U.S. 957 (2004). "Exemption from taxation is a matter of special favor or grace. It will be recognized only where the property falls clearly and unmistakably within the express words of a

legislative command." *Willowdale LLC* v. *Assessors of Tops-field*, 78 Mass. App. Ct. 767, 769 (2011), quoting from *New England Legal Foundation* v. *Boston*, 423 Mass. 602, 609 (1996). As the taxpayer seeking abatement, MASSPCSCO bears the burden of demonstrating entitlement to the exemption claimed. See *Global Cos., LLC*, 459 Mass. at 494. "[B]ecause the board is an agency charged with administering the tax law and has 'expertise in tax matters,' . . . we give weight to its interpretation of tax statutes, . . . and will affirm its statutory interpretation if [it] is reasonable." *AA Transp. Co.* v. *Commissioner of Rev.*, 454 Mass. 114, 119 (2009), quoting from *RHI Holdings, Inc.* v. *Commissioner of Rev.*, 51 Mass. App. Ct. 681, 685 (2001).

At the time this action was before the board, G. L. c. 59, § 5, Sixteenth (2), amended by St. 1979, c. 777, § 1, provided that all property, with certain exceptions not material here, of either "(a) domestic business corporation or (b) a foreign corporation, both as defined in section thirty of chapter sixty-three," shall be exempt from personal property taxes.[3,4] In *Brown Rudnick*, 389 Mass. at 302-303, the Supreme Judicial Court concluded that an entity's mere compliance with the statutory definition of a corporation does not necessarily entitle the entity to claim exemption under G. L. c. 59, § 5, Sixteenth (2). Rather, "[i]t must still be shown that the corporation was, in fact, engaged in

---

[3]At the time, G. L. c. 59, § 5, Sixteenth (2), read: "In the case of (a) domestic business corporation or (b) a foreign corporation, both as defined in section thirty of chapter sixty-three, all property owned by such corporation other than the following: — real estate, poles, underground conduits, wires and pipes, and machinery used in the conduct of the business, which term, as used in this clause, shall not be deemed to include stock in trade or any personal property directly used in connection with dry cleaning or laundering processes or in the refrigeration of goods or in the air-conditioning of premises or in any purchasing, selling, accounting or administrative function."

[4]General Laws c. 59, § 5, Sixteenth (2), has since been amended by St. 2008, c. 173, to read: "In the case of a business corporation subject to tax under section 39 of chapter 63 that is not a manufacturing corporation, all property owned by the corporation other than the following: — real estate, poles, underground conduits, wires and pipes, and machinery used in the conduct of the business, which term, as used in this clause, shall not be considered to include stock in trade or any personal property directly used in connection with dry cleaning or laundering processes or in the refrigeration of goods or in the air-conditioning of premises or in any purchasing, selling, accounting or administrative function." This amendment does not affect our analysis in this case.

business." *Id.* at 304. For the purposes of this inquiry, the court defined "business" as "an activity which occupies the time, attention and labor of men for the purpose of livelihood, profit or gain." *Id.* at 303, quoting from *Whipple* v. *Commissioner of Corps. & Taxn.*, 263 Mass. 476, 485-486 (1928). To further elaborate on the concept, the court quoted the language of Judge Learned Hand: "[T]o be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning; and that escaping taxation is not 'business' in the ordinary meaning." *Id.* at 306, quoting from *National Investors Corp.* v. *Hoey*, 144 F.2d 466, 468 (2d Cir. 1944).

Here, the board properly concluded that MASSPCSCO did not "engage in business" as required by *Brown Rudnick*. MASSPCSCO was created solely for the purpose of avoiding tax liability.[5] The entity did not maintain a separate bank account, and all lease payments made by Sprint Spectrum to MASSPCS-CO were implemented by ledger entries, not actual cash transactions. As the board astutely pointed out, these entries had "little economic substance." At all relevant times, MASSPCSCO had no employees. Significantly, MASSPCSCO did not implement several of the "legitimizing" strategies advised by Deloitte. For instance, MASSPCSCO did not hold any assets other than those it leased to Sprint Spectrum, nor did it lease property to anyone other than Sprint Spectrum. Additionally, the lease transactions between MASSPCSCO and Sprint Spectrum were not at "arms' length" as Deloitte had suggested. Given this factual scenario, the board was justified in determining that "MASSPCS-CO did not engage in any real business other than escaping taxation."

MASSPCSCO contends that the board's application of the precepts of *Brown Rudnick* was inappropriate because it is a

---

[5]We recognize that "tax motivation is irrelevant where a business reorganization results in the creation of a viable business entity engaged in substantive business activity rather than in a 'bald and mischievous fiction.' " *Sherwin-Williams Co.* v. *Commissioner of Rev.*, 438 Mass. 71, 89 (2002), quoting from *Moline Props.* v. *Commissioner of Int. Rev.*, 319 U.S. 436, 439 (1943).

"foreign corporation" as opposed to a "domestic business corporation." This argument is unavailing. While it is true that *Brown Rudnick* involved a domestic business corporation rather than a foreign corporation, we see no reason why such a distinction should affect our analysis. Indeed, the inquiry here, as it was in *Brown Rudnick,* 389 Mass. at 303, is "whether a corporation claiming exemption under G. L. c. 59, § 5, Sixteenth (2), is operated for dominantly business purposes," not whether the corporation is a domestic or foreign corporation. Moreover, a significant and inappropriate loophole would exist if the prerequisites set forth in *Brown Rudnick* did not apply to foreign corporations. On this point, we agree with the board's determination that "it strain[s] credulity to suggest, as MASSPCSCO has, that the Legislature intended to treat a foreign corporation more leniently than a domestic business corporation for purposes of the stock-in-trade exemption."

Even assuming that the *Brown Rudnick* holding was not applicable to foreign corporations, MASSPCSCO was still not entitled to claim the stock in trade exemption because it had failed to prove that it was not the result of a "sham transaction." "Massachusetts recognizes the 'sham transaction doctrine' that gives the commissioner the authority 'to disregard, for taxing purposes, transactions that have no economic substance or business purpose other than tax avoidance.' . . . The doctrine generally 'works to prevent taxpayers from claiming the tax benefits of transactions that, although within the language of the tax code, are not the type of transactions the law intended to favor with the benefit.' " *Sherwin-Williams Co.* v. *Commissioner of Rev.,* 438 Mass. 71, 79-80 (2002), quoting from *Syms Corp.* v. *Commissioner of Rev.,* 436 Mass. 505, 509-510 (2002).

Under this doctrine, "for a business reorganization that results in tax advantages to be respected for taxing purposes, the taxpayer must demonstrate that the reorganization is 'real' or 'genuine,' and not just form without substance." *Id.* at 84. "Stated otherwise, the taxpayer must demonstrate that the reorganization results in 'a viable business entity,' that is one which is 'formed for a substantial business purpose or actually engage[s] in substantive business activity.' " *Ibid.,* quoting from *Northern Ind. Pub. Serv. Co.* v. *Commissioner of Int. Rev.,* 115 F.3d 506, 511 (7th Cir. 1997).

As the board noted, "at all relevant times, MASSPCSCO had no employees; did not maintain separate bank accounts; did not independently invest any of its profits; did not do business with any other parties other than what was incidental to its leasing of equipment to its parent; did not attempt to lease any property to third parties; did not maintain any office space or real estate; was unable to exercise any independent control; did not purchase any of its equipment; and was not shown to be dealing with affiliates in an arm's-length manner or to be responsible for any debt incurred as a result of any purchases of equipment or property on its behalf."[6] On this record, it is clear that MASSPCSCO was created solely for the purpose of avoiding taxation and was not a viable business entity engaging in substantial business activities.[7] We therefore agree with the board's conclusion that the business reorganization employed by Sprint Spectrum, resulting in the creation of MASSPCSCO, was a sham transaction. Accordingly, MASSPCSCO's applications for abatement were appropriately denied.

For the foregoing reasons, the decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[6] We note that the court's decisions in *Brown Rudnick* and *Sherwin-Williams* are complementary of each other. As a result, our factual analysis is similar under both the sham transaction doctrine described in *Sherwin-Williams*, 438 Mass. at 79-86, and the "engaged in business" inquiry set forth in *Brown Rudnick*, 389 Mass. at 301.

[7] See note 5, *supra*.