## REGIS COLLEGE *VS.* TOWN OF WESTON & others.[1]

Suffolk. December 5, 2011. - May 22, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Zoning,* Educational use. *Education,* Zoning. *Words,* "Educational purpose."

Statement that, in principle, the promotion of the cognitive and physical well-being of elderly persons through academic and physical instruction may be an educational purpose qualifying for protection under the Dover Amendment, G. L. c. 40A, § 3, second par. [284-287]; and that while the protection of the Dover Amendment is not limited to traditional or conventional educational regimes, the term "educational purposes" should be construed so as to minimize the risk that such protection will improperly be extended to projects that do not in fact have as their primary and genuine purpose a goal that reasonably could be described as educationally significant [287-291].

In a civil action brought by a private college against a town and a local zoning authority (defendants), seeking a judgment declaring that its proposed development of residential and educational facilities for older adults qualified for protection from local zoning laws under the Dover Amendment, G. L. c. 40A, § 3, second par., the Land Court judge erred in granting summary judgment in favor of the defendants, where affidavits submitted by the college listing facets of the academic program for the proposed facilities outlined multiple aspects of the project that reasonably could be considered educational, and therefore, a finder of fact rationally could conclude that the project would primarily serve educational purposes. [291-294]

CIVIL ACTION commenced in the Land Court Department on November 25, 2005.

The case was heard by *Alexander H. Sands, III,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Catherine J. Savoie* for the plaintiff.

---

[1] The zoning board of appeals of Weston. A judge in the Land Court allowed Christie Hedges, Robert Hedges, Ahmed Mohiuddin, Patricia Mohiuddin, Arnold Zenker, and Barbara Zenker to intervene as defendants.

*George X. Pucci* for town of Weston & another.

*Lisa C. Goodheart* for the interveners.

The following submitted briefs for amici curiae:

*Donald V. Rider, Jr.,* City Solicitor, & *Christopher J. Petrini, Barbara J. Saint Andre,* & *Heather W. Kingsbury,* for City Solicitors and Town Counsel Association & another.

*Robert J. McCarron* for Association of Independent Colleges and Universities in Massachusetts.

*F. Beirne Lovely, Jr.,* for Archdiocese of Boston.

LENK, J. The Dover Amendment, G. L. c. 40A, § 3, second par., exempts from certain local zoning laws land or structures that are to be used by nonprofit educational institutions for "educational purposes." The plaintiff, a private college, brought suit against a town and a local zoning authority (defendants), seeking, among other things, a declaration that its proposed development of residential and educational facilities for older adults known as "Regis East" qualifies for protection under the Dover Amendment. A Land Court judge granted summary judgment in favor of the defendants. The plaintiff appealed and we granted its application for direct appellate review. Because we cannot conclude that the plaintiff "has no reasonable expectation" of demonstrating that Regis East will primarily operate in furtherance of educational purposes, *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 716 (1991), we vacate the judgment and remand the case to the Land Court.[2]

1. *Background.* a. *Facts.* The parties stipulate that the plaintiff is a "non-profit educational corporation" within the meaning of the Dover Amendment.[3] The plaintiff offers both graduate and undergraduate degrees, operates a continuing education program designed for senior citizens residing in the town of Weston (Weston) and surrounding communities, and maintains established nursing and social work programs.

---

[2]We acknowledge the amicus briefs of the City Solicitors and Town Counsel Association and the Massachusetts Municipal Association; the Association of Independent Colleges and Universities in Massachusetts; and the Archdiocese of Boston.

[3]General Laws c. 40A, § 3, second par. (Dover Amendment), exempts from all but specified types of municipal zoning regulations the use of land by religious, governmental, and nonprofit entities "for religious purposes or for educational purposes."

The plaintiff is affiliated with the Congregation of the Sisters of St. Joseph (Sisters of St. Joseph), a Catholic religious order whose members continue to form a majority of the plaintiff's board of governors. Since 1927, either the plaintiff or the Sisters of St. Joseph have held title to approximately 130 acres of land in Weston. The plaintiff's campus presently occupies approximately seventy of these acres, and is located on the western side of Wellesley Street, a street that bisects the larger parcel of campus land. The proposed development, Regis East, will be across the street on a site of approximately sixty acres that is at present largely wooded and undeveloped.

As planned, Regis East will comprise eight buildings, with a total built area of 766,600 square feet.[4] The motion judge inferred based on facts in the record that the residential units themselves would occupy approximately 470,000 square feet, accounting for approximately sixty per cent of the built area. The remaining (nonresidential) area is expected to be used for a variety of purposes, including dining, meetings and events, fitness activities, healthcare, and recreation. The project's nonresidential area will also house classrooms, a "Children's Center," and an "Adult Day Care Center." The nonresidential area will contain a central connecting "promenade," with two levels of parking underneath it.

Residents at Regis East will live in apartment units of about 1,300 square feet. They are expected to average seventy-five years of age at the time of their arrival. They will be admitted based on an application and interview process, the details of which remain unspecified. Residents will be required to pay an entrance fee of between $700,000 and $1 million that, in large part, will be returnable to them, or their estates, should they leave. They will also pay a monthly fee of approximately $4,000.[5]

The plaintiff indicates by affidavit that residents will be assigned "academic advisors" and will be required to enroll in a minimum of two courses per semester,[6] which they will choose

---

[4]The parties stipulate that the development does not comply with the relevant zoning bylaws; the area is zoned for single-family residences.

[5]In 2004, the plaintiff's internal revenue projections suggested that the project would generate net revenue commensurate with sale or lease of the land. However, the continuing accuracy of these revenue projections is disputed.

[6]A proposed draft of the Regis East residency agreement makes completion

in consultation with their advisors. Residents will be able to satisfy the minimum course requirement through courses offered to students enrolled in degree-granting programs, the current continuing education program, or self-directed study approved by the resident's academic advisor and by a person holding the title of "the Dean of the East Campus."

Residents will also be able to enroll in more than the minimum required level of classes, and potentially to pursue degrees and certificates awarded to the plaintiff's current student body. Further, residents will be assigned a "wellness coordinator," and will be required to take health and fitness classes offered "through" the plaintiff. The plaintiff avers that these requirements will be individualized and coordinated through a "Wellness and Education Curriculum Plan" that will account for each resident's individual intellectual and physical abilities and interests, and that will be approved by the dean.

The plaintiff also anticipates a level of integration between Regis East and its existing campus. Residents will have full access to facilities and events on the west campus. West campus students also are expected to be able to take advantage of nursing and social work opportunities that may arise at Regis East. The plaintiff emphasizes, in particular, that students enrolled in its degree-granting nursing programs could potentially obtain clinical placements at Regis East.[7] However, the plaintiff has provided few specifics on how such internships and clinical placements will be implemented.

b. *Procedural history.* In 2005, the plaintiff petitioned the zoning board of appeals of Weston (zoning board) for relief from certain of Weston's municipal zoning regulations that would otherwise preclude construction of the Regis East development. The zoning board denied this petition, based in part on its determination that it did not have jurisdiction to find that Weston's zoning regulations were preempted by the Dover

_____

of at least two academic courses per semester each year an express condition of residency, and the plaintiff states in an affidavit that a similar term will be included in the final agreement.

[7] The plaintiff avers that it is currently required to compete for clinical placements for its students offsite, at locations that the plaintiff maintains are difficult for students to reach given the lack of public transportation in Weston.

Amendment. The plaintiff then brought an action in the Land Court against Weston and its zoning board.

A Land Court judge determined that the zoning board did have jurisdiction to determine whether the project was protected under the Dover Amendment, and remanded the matter for such a determination. On remand, the zoning board again denied the plaintiff's petition. The parties then returned to the Land Court. The judge subsequently granted summary judgment for the defendants, concluding that the plaintiff's proposed use of Regis East did not fall within the protection of the Dover Amendment.

The judge rested his decision on a determination that Regis East's educational purpose "seems subordinate to [the plaintiff's] desire to provide elderly housing and/or a source of revenue." He noted further that the record was "unclear" whether the plaintiff would in practice insist on the residents participating in educational programs, and specifically whether the plaintiff would in fact evict residents who failed to complete the minimum course requirement. Finally, he echoed the defendants' concern that "elements" of the project's educational components were "vague."

2. *Discussion.* We first address the scope of the Dover Amendment's protection of "the use of land or structures for . . . educational purposes." Concluding that the statute protects only those uses serving primarily educational purposes, we then address whether the plaintiff has shown that the record before the motion judge contains evidence sufficient to create a material dispute of fact whether Regis East has as its dominant purpose a goal that "reasonably could be described as educationally significant." *Whitinsville Retirement Soc'y, Inc.* v. *Northbridge*, 394 Mass. 757, 761 n.3 (1985) (*Whitinsville*).

a. *Standard of review.* We review a grant of summary judgment de novo. *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007). Summary judgment is appropriate when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), and cases cited.

b. *Scope of protected educational purposes.* The Dover Amendment provides, in relevant part:

> "*[N]or shall any [zoning] ordinance or by-law prohibit, regulate or restrict the use of land or structures* for religious purposes or *for educational purposes on land owned or leased by* the commonwealth or any of its agencies, subdivisions or bodies politic or by a religious sect or denomination, or by *a nonprofit educational corporation*; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements" (emphasis added).

We have construed this text on a number of occasions. See, e.g., *Whitinsville, supra* at 759-761; *Fitchburg Hous. Auth.* v. *Board of Zoning Appeals of Fitchburg*, 380 Mass. 869, 872-874 (1980) (*Fitchburg*); *Kurz* v. *Board of Appeals of N. Reading*, 341 Mass. 110, 113 (1960). In so doing, we have emphasized that the word "education," as employed in Massachusetts statutes and cases, "is a broad and comprehensive term." *Mount Hermon Boys' Sch.* v. *Gill*, 145 Mass. 139, 146 (1887). We have refused to limit Dover Amendment protection to traditional or conventional educational regimes.

We have also, however, recognized two commonsense and interrelated limits on the statute's application. The first is that the Dover Amendment protects only those uses of land and those structures that have as their bona fide goal something that can reasonably be described as "educationally significant." *Whitinsville, supra* at 761 n.3. The second is that the educationally significant goal must be the "primary or dominant" purpose for which the land or structures will be used. *Id.* at 760, citing *Cummington Sch. of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 603 (1977). See *Fitchburg, supra* at 874.

i. *Nontraditional educational goals.* A proposed use of land or structures may have an educational purpose notwithstanding that it serves nontraditional communities of learners in a manner tailored to their individual needs and capabilities. *Fitchburg, supra* at 874-875. Accordingly, we have concluded that the Dover Amendment applied to certain facilities for the disabled or the infirm, notwithstanding that the education afforded by such institutions differed markedly from that offered by

"traditional" academic institutions. See *id.* at 869-870 (residential facility in which "adults, with histories of mental difficulties, will live while being trained in skills for independent living, such as self-care, cooking, job seeking, budgeting, and making use of community resources"); *Gardner-Athol Area Mental Health Ass'n* v. *Zoning Bd. of Appeals of Gardner,* 401 Mass. 12, 13-14 (1987) (residential facility where adults with mental disabilities "would be taught daily living, as well as vocational skills").

These cases comport not only with the long-standing view in Massachusetts that "[e]ducation is a broad and comprehensive term,"[8] *Mount Hermon Boys' Sch.* v. *Gill, supra* at 146, but also with the legislative history of the Dover Amendment. As part of a general revision of the zoning statutes in 1975, the Department of Community Affairs proposed that Dover Amendment protection be limited to "school[s]" or analogous "place[s] or facilit[ies]." See 1972 House Doc. No. 5009 at 84. In rejecting this language, the Legislature chose not to adopt a statutory test that would limit Dover Amendment protection only to projects similar to "schools," a term fairly read as denoting traditional educational institutions. Such a rejection "provides an indication that the Legislature did not want" the protection of the Dover Amendment to be limited only to those facilities closely analogous to traditional schools and colleges.[9] *Commonwealth* v. *Houston,* 430 Mass. 616, 625 (2000). See *Green* v. *Wyman-*

---

[8]Early cases construing the word "education" interpreted that term as extending to a farm operated incident to a school, *Mount Hermon Boys' Sch* v. *Gill,* 145 Mass. 139, 146 (1887), and an institution "for the purpose of training young women in the principles of home making." *Assessors of Boston* v. *Garland Sch. of Home Making,* 296 Mass. 378, 380 (1937). We presume that, in choosing statutory terms, the Legislature is aware of the application accorded those terms at common law and under prior statutes. See *Guaranty-First Trust Co.* v. *Textron, Inc.,* 416 Mass. 332, 336 (1993).

[9]The Legislature's rejection of language in the course of a continuous process that in fact results in the enactment of a statutory amendment should be distinguished from the Legislature's failure to act on a proposed bill. In the former case, the Legislature has been presented with a series of drafting choices, and has selected one, thereby implicitly rejecting the alternatives. See *Commonwealth* v. *Houston,* 430 Mass. 616, 625 (2000). In the latter case, the Legislature has simply failed to act, a failure which might represent a rejection of the proposed text, but could also represent a determination that the Legislature's limited time is better spent addressing other issues. See note 10, *infra.*

*Gordon Co.*, 422 Mass. 551, 556 (1996), citing 2A Singer, Sutherland Statutory Construction § 48.04 (5th ed. 1992).

In light of the historically broad meaning accorded the word "education," and the flexibility preserved by the Legislature in its 1975 rewording of the Dover Amendment, we are unwilling to conclude that a party seeking the protection of the Dover Amendment is required to show that its proposed use of land will be analogous to a traditional educational institution. Thus, there is no reason why, in principle, the promotion of "the cognitive and physical well being of elderly persons" through academic and physical instruction could not be an educational purpose under the Dover Amendment. See *Lasell Village, Inc.* v. *Assessors of Newton*, 67 Mass. App. Ct. 414, 423 (2006).

ii. *Primary educational purpose.* That conclusion does not, however, dispose of the case before us. In our prior Dover Amendment cases, unlike the present action, the parties did not dispute the primary purposes to be accomplished by the challenged projects, but rather questioned whether those purposes were properly characterized as "educational." See, e.g., *Whitinsville, supra* at 759 (no dispute that facility would "teach[] [elderly residents] crafts and provid[e] entertainment and stimulus for them"); *Fitchburg, supra* at 870, 874 (no dispute that facility would house "adults, with histories of mental difficulties, . . . while . . . train[ing them] in [specified] skills for independent living"). Here, the concern expressed both by the judge and by the defendants is that the project may not in fact operate as the plaintiff claims it will. In the zoning board's view, the educational aspects of the Regis East development are so "amorphous, flexible and vague" as to suggest that they are mere "window dressing" for what is essentially a "luxury residential" complex.

It is well settled that purely residential and purely recreational projects are not referred to in normal usage as "educational," notwithstanding that the residences may be quiet and conducive to study, *Phi Beta Epsilon Corp.* v. *Boston*, 182 Mass. 457, 459 (1903), or that the recreation provided "be entertainment of the highest and most beneficial type." *Boston Symphony Orch.* v. *Assessors of Boston*, 294 Mass. 248, 256 (1936). Further, we have required not only that a proposed use of land have

educational purposes, but also that these purposes be "primary or dominant." *Gardner-Athol Area Mental Health Ass'n* v. *Zoning Bd. of Appeals of Gardner*, 401 Mass. 12, 18 (1987) (Lynch, J., dissenting). Thus, the plaintiff must show not only that Regis East will serve educational purposes, but that such purposes predominate over Regis East's residential and recreational components.

The plaintiff challenges this dominant purpose requirement. Noting that the words "primary" and "dominant" do not appear in the statutory text, the plaintiff contends that Regis East should qualify as a "use of land for . . . educational purposes" so long as the project incorporates more than "incidental" educational components. Although the dominant purpose requirement represents a judicial gloss on the statute, it is consistent with the statutory language and furthers the purposes of the act.[10]

In employing the phrase "educational purposes," the Legislature used "everyday words" that must be interpreted in view of common usage. See *Kurz* v. *Board of Appeals of N. Reading*, 341 Mass. 110, 112 (1960). See also *Schulman* v. *Attorney Gen.*, 447 Mass. 189, 191 (2006), quoting *Mazzone* v. *Attorney Gen.*, 432 Mass. 515, 526 (2000) (Legislature presumed to employ statutory terms in manner consistent with their "com-

---

[10]We are not persuaded by the plaintiff's contention that the postenactment history of the Dover Amendment indicates a legislative intent to protect projects with subsidiary rather than primary educational purposes. The plaintiff's argument relies heavily on a proposed 2001 bill that would have "require[d] that education is the primary use and purpose of the facility and not incidental thereto." 2001 House Doc. No. 1836. The plaintiff states that the decision not to enact this bill suggests that the Legislature did not wish to see a primary purpose requirement made part of the Dover Amendment.

"[F]ailed legislative proposals are 'a particularly dangerous ground on which to rest an interpretation of a prior statute.' " *United States* v. *Craft*, 535 U.S. 274, 287 (2002), quoting *Pension Benefit Guar. Corp.* v. *LTV Corp.*, 496 U.S. 633, 650 (1990). Where a legislative proposal is not contradicted by the language of a later-enacted bill, compare note 9, *supra*, but simply not enacted, the Legislature's failure to act is better explained by "[t]he practicalities of the legislative process" than by "legislative dislike for the principle involved." *Franklin* v. *Albert*, 381 Mass. 611, 615-616 (1980). Indeed, the Legislature's failure to act could also represent a determination that its concerns have been adequately addressed "by . . . judicial development of decisional law." *Id.* at 616, quoting H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 1395-1396 (tent. ed. 1958).

mon and approved usage"). "[I]n a broad sense, anything taught might be considered, to a greater or less degree, educational." *Kurz* v. *Board of Appeals of N. Reading, supra* at 113. That being said, however, the Dover Amendment is a statute regulating "land use, not philosophy," *Needham Pastoral Counseling Ctr.* v. *Board of Appeals of Needham*, 29 Mass. App. Ct. 31, 34 (1990), and a facility would only be described as "educational" in common usage if it served primarily educational purposes.[11] *Whitinsville, supra* at 760. See Black's Law Dictionary 592 (9th ed. 2009) (defining "educational institution" as "all buildings and grounds *necessary to accomplish* the full scope of educational instruction" [emphasis supplied]).

Moreover, the Dover Amendment represents a specific exception to the general power of municipalities to adopt and enforce zoning regulations and by-laws. See *Crall* v. *Leominster*, 362 Mass. 95, 101-102 (1972). "The whole of the Dover Amendment . . . seeks to strike a balance between preventing local discrimination against an educational use . . . and honoring legitimate municipal concerns that typically find expression in local zoning laws" (citation omitted). *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 757 (1993). As a practical matter, the protection afforded by the Dover Amendment can be financially advantageous to the land owner. Because the statutory purpose of preventing local discrimination against educational uses is only furthered if the intended use of the land is in fact educational, the term "educational purposes" should be construed so as to minimize the risk that Dover Amendment protection will improperly be extended to situations where form has been elevated over substance.[12] See Rice, Re-Evaluating the

---

[11]Recent Land Court Dover Amendment cases where no primary educational purpose was found demonstrate multiple examples of facilities that would not normally be described as "educational," yet arguably contain nontrivial educational components. See, e.g., Aquarius Sanctuary Ctr. for Higher Learning & Healing, Inc. *vs.* Zoning Bd. of Appeals of Littleton, No. 378178(JCC) (Dec. 17, 2009) (alternative medicine clinic could not establish that it was educational merely because it offered alternative medicine workshops); Metrowest YMCA, Inc. *vs.* Hopkinton, No. 287249, Civ. A. No. 03-0467 (July 10, 2006) (fitness and pool facility did not qualify as educational facility merely because it offered exercise-related classes "typical of those" offered at commercial fitness centers).

[12]In construing the educational exemption to the Dover Amendment, we

Balance Between Zoning Regulations and Religious and Educational Uses, 8 Pace L. Rev. 1, 42 (1988).

The primary purpose requirement accordingly reflects the concern that the Dover Amendment protect only those projects in fact having as their primary and genuine purpose a "goal that reasonably could be described as educationally significant." *Whitinsville, supra* at 761 n.3. Otherwise put, the requirement helps ensure that a party invoking Dover Amendment protection does so without engrafting an educational component onto a project in order to obtain favorable treatment under the statute.

The dominant purpose requirement is consistent with the zoning act as a whole. In categorizing uses of land under the zoning act, courts have traditionally sought to determine the principal use of an establishment "viewed in its totality." See, e.g., *Foxborough* v. *Bay State Harness Horse Racing & Breeding Ass'n,* 5 Mass. App. Ct. 613, 617, 619 (1977). Once identified, that principal use rather than any subsidiary use generally controls determinations of the property's consistency with zoning ordinances. See, e.g., *Henry* v. *Board of Appeals of Dunstable,* 418 Mass. 841, 844 (1994); *Petros* v. *Superintendent & Inspector of Bldgs. of Lynn,* 306 Mass. 368-371-372 (1940). Thus, the requirement that it is a project's primary purpose rather than any subsidiary purpose that controls whether it is protected by the Dover Amendment is consistent with an interpretation of the statute as part of a "harmonious[] . . . [and] consistent body"

---

have often looked to decisions addressing tax exemptions. See *Fitchburg Hous. Auth.* v. *Board of Zoning Appeals of Fitchburg,* 380 Mass. 869, 873-874 (1980), citing *Cummington Sch. of the Arts, Inc.* v. *Assessors of Cummington,* 373 Mass. 597, 604 (1977); *Assessors of Lancaster* v. *Perkins Sch.,* 323 Mass. 418, 422 (1948); *President & Fellows of Harvard College* v. *Assessors of Cambridge,* 175 Mass. 145, 146-147 (1900); and *Trustees of Phillips Academy* v. *Andover,* 175 Mass. 118, 125 (1900). As with the Dover Amendment exemption from zoning laws, tax exemptions have obvious financial benefits to those claiming them. The appropriate inquiry in determining whether an entity claiming exemption from taxation has satisfied its burden of proof extends well beyond "bare statutory compliance." *Brown, Rudnick, Freed & Gesmer* v. *Assessors of Boston,* 389 Mass. 298, 302 (1983). "[W]e have refused to allow form to control." *Id.* at 303. Cf. *New England Theosophical Corp.* v. *Assessors of Boston,* 172 Mass. 60, 64 (1898) (refusing to apply tax exemption for "literary" societies in manner that would "permit any [group of] men . . . to live free from taxation, by forming a corporation" and asserting that it operated for literary and educational ends).

of land use law. Cf. *Boston Hous. Auth.* v. *Labor Relations Comm'n*, 398 Mass. 715, 718 (1986).

Our courts have repeatedly observed that zoning ordinances are only equitable, and only likely to succeed, if they are applied uniformly. See *Amberwood Dev. Corp.* v. *Board of Appeals of Boxford*, 65 Mass. App. Ct. 205, 212 (2005), and cases cited. Indeed, the Legislature requires by statute that, with specified exceptions, zoning ordinances or bylaws "shall be uniform within the district for each class or kind of structures or uses permitted." G. L. c. 40A, § 4. While the Dover Amendment creates an exception to this general rule of uniformity, it does not effect a wholesale suspension of that principle. See *Campbell* v. *City Council of Lynn*, 415 Mass. 772, 778 (1993); *Trustees of Tufts College* v. *Medford*, *supra* at 760-761. It is fitting, therefore, that the statute preempt the uniform application of zoning laws only where those laws impede the use of land for educational activities, and not where their primary effect is on noneducational uses.

Hence, we reaffirm that in order to claim the protection of the Dover Amendment's "educational purposes" clause, a landowner must demonstrate that its use of land will have as its primary purpose a goal that can reasonably be described as educationally significant.

c. *Summary judgment.* As discussed, *supra*, in order for Regis East to qualify for Dover Amendment protection, the plaintiff must establish that the residential and recreational aspects of Regis East do not constitute its primary purpose but instead support the project's dominant educational purpose of providing academic and health-related instruction to older adults. In order for the defendants, as moving parties, to prevail on summary judgment, however, they must establish that the plaintiff "has no reasonable expectation" of making such a showing at trial. See *Carey* v. *New England Organ Bank*, 446 Mass. 270, 278 (2006), quoting *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). On this record, we cannot say that the defendants have met their burden in this regard.

A party moving for summary judgment who does not bear the ultimate burden of proof at trial may discharge the party's initial burden of production by demonstrating "to the court that

the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Kourouvaci-lis* v. *General Motors Corp., supra* at 715, quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring). It is then incumbent on the nonmovant, here the plaintiff, to demonstrate the existence of a dispute as to the material facts challenged by the moving party with admissible evidence. *Kour-ouvacilis* v. *General Motors Corp., supra* at 711. Such a demonstration must be made on the basis of "specific facts." Mass R. Civ. P. 56 (e), 365 Mass 824 (1974). See *Ng Bros. Constr., Inc.* v. *Cranney*, 436 Mass. 638, 648 (2002) (contractor could not obtain summary judgment against homeowners where contractor could not articulate specific services performed); *Haverty* v. *Commissioner of Correction*, 437 Mass. 737, 754 (2002) (prisoner plaintiffs could not avoid summary judgment through "generalized statements about changes in conditions within the entire prisoner population").

The defendants based their motion for summary judgment on the contention that Regis East does not serve a bona fide educational purpose and that, even if some such purpose could be shown, there would be no basis on which a fact finder could conclude that it was primary or dominant.

The plaintiff has presented multiple affidavits listing "facets of the Regis East academic program."[18] The plaintiff avers, among other things, that residents of Regis East will be subject to a "mandatory academic requirement of a minimum of two academic courses each semester"; that residents will be provided with an individually-tailored "Wellness and Education Cur-riculum Plan"; and that residents will be paired with academic advisors and wellness coordinators. The plaintiff's affiants also contemplate a "full and complete integration" between residents of Regis East and its more traditional students, including cross-offerings of classes and extracurricular activities.

Further, the plaintiff's affidavits explain that the Regis East project was conceived "as an extension of Regis's mission to educate people," and that each aspect of Regis East is tailored to this mission. The plaintiff substantiates this claim by refer-

---

[13]The contents of these affidavits are detailed at greater length in part 1, *supra*.

ence to its current continuing education programs for senior citizens, as well as its traditional focus on gerontology and what it describes as the "caring professions." We cannot say that it would be irrational for a finder of fact to conclude from this evidence that Regis East will primarily serve educational purposes. Cf. *Lasell College* v. *Newton*, 36 Mass. App. Ct. 1122 (1994) (affirming, in unpublished memorandum and order, on similar record, finding of trial judge that retirement community had dominant educational purpose).

In determining that the affidavits and accompanying materials submitted by the plaintiffs were not sufficient to avoid summary judgment, the motion judge emphasized that these materials were often "vague and amorphous."[14] While hardly a model of specificity, the materials are nonetheless not so vague as to be impermissibly conclusory. See, e.g., *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.*, 416 Mass. 684, 696 (1993) (affidavit conclusory where it consisted of unsupported conclusions of law or fact); *Graham* v. *Quincy Food Serv. Employees Ass'n & Hosp., Library, & Pub. Employees Union*, 407 Mass. 601, 610 n.4 (1990) (affidavit conclusory where it consisted largely of denials of movant's account and statements of "belief" rather that knowledge). Rather, viewed in the light most favorable to the plaintiff as the nonmoving party, the affidavits outline multiple aspects of the Regis East project that reasonably could be considered educational. Moreover, the record suggests an explanation for the lack of specificity in the plaintiff's affidavits: that the novelty of the Regis East project requires that many of its details will necessarily be worked out by experienced educators through day-to-day operation.

We note further that prior Dover Amendment cases addressing whether a proposed use has a dominant educational purpose have turned on specific findings of fact, including those bearing on how a project would likely be operated. See, e.g., *Whitinsville, supra* at 759-760; *Fitchburg, supra* at 874-875. Indeed, a

---

[14]For example, the plaintiff has provided few details on the specific qualifications it will require of its academic staff, the minimum level of class performance that will constitute successful completion of a resident's mandatory course requirements, or the doctrine or philosophy undergirding its planned curricular offerings.

central point of contention here is whether Regis East will in fact be operated in line with its declared purposes. Cf. *Lasell Village* v. *Assessors of Newton*, 67 Mass. App. Ct. 414, 422, 425 & n.13 (2006) (determining on appeal from tax assessment that project, which had been granted Dover Amendment protection, was not in fact operated primarily for educational purposes). Because the motion judge decided this case at the summary judgment stage, he could make no factual determinations in this regard.[15]

The resolution of that and other pertinent disputed matters will implicate credibility determinations, such as whether the plaintiff in fact intends to enforce its mandatory course requirements and evict residents who do not comply, and whether residents' individualized curricular plans will be developed in tandem with professional educators, or will instead consist of recreational activities. The motion judge's memorandum of decision reveals a level of skepticism on these points that suggests a weighing of evidence more appropriate at trial, where the credibility of witnesses and the weight to be accorded evidence may be addressed by a trier of fact. On the record before us, the defendants have not shown that they are entitled to judgment as a matter of law. See *Bayer Corp.* v. *Commissioner of Revenue*, 436 Mass. 302, 307-308 (2002).

3. *Conclusion.* The judgment is vacated and the case is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*

---

[15]The judge instead emphasized uncontested facts related to the proportion of Regis East's built square footage that the plaintiff will devote to residential uses, and the project's significant revenue. Such considerations have not been central to our prior cases. Rather, we have considered as protected structures facilities not themselves used for educational activities but operated with the primary goal of supporting an institution's educational mission. See, e.g., *Radcliffe College* v. *Cambridge*, 350 Mass. 613, 616-618 (1966).